**STATE of Tennessee, ex rel. Stephanie SCOTT, Plaintiff–Appellee,**

v.

**Mark BROWN, Defendant–Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Aug. 20, 1996.

Clifford E. Wilson, Madisonville, for defendant-appellant.

Charles W. Burson, Attorney General and Reporter, James H. Tucker, Jr., Assistant Attorney General, Nashville, for plaintiff-appellee.

*OPINION*

GODDARD, Presiding Judge.

Mark Brown appeals a judgment of the Circuit Court for Bradley County which found that he was the father of Kara Danielle Stephens, who was born on May 4, 1977, and attained her 18th birthday during the pendency of this suit.

He raises the following three issues on appeal:

---

**4.** Each reporter's per diem was $220.

1. Was the Learned Juvenile Judge correct in overruling the Respondent's Motion to Dismiss on the basis that the mother, Stephanie Scott, was judicially estopped to allege that the Respondent is the father of Kara Danielle Stephens?

2. Was the Juvenile Court correct in granting Petitioner's Motion to require the Respondent to submit to blood tests where the demand for blood tests was not made at the original appearance as required by Statute as it existed at the time of the filing of the Petition in August of 1990?

3. Was the Learned Circuit Judge correct in granting Petitioner's Motion to establish paternity without a Trial and based solely on blood test results, applying the Statute retroactive and denying the Respondent a jury trial which had been properly demanded?

The pertinent facts necessary for disposition of this appeal will be listed chronologically:

1. March 22, 1978, divorce suit filed by Stephanie Stephens against Dennis Stephens in the Chancery Court for Polk County, alleging two children, one of whom was Karen Stephens, nine months of age, had been born to the marriage.

2. August 26, 1978, final decree granting divorce and custody of the parties' children to Mrs. Stephens, and ordering $40 per week be paid by Mr. Stephens as child support.

3. August 22, 1986, joint petition by Mr. and Mrs. Stephens seeking to have the Court declare that Mr. Stephens was not the natural father of Kara.

4. August 30, 1986, instrument styled "Agreed Amended Order," finding that Kara "is not the natural child of Dennis Stephens" and relieving him of any obligation to support her.

5. August 27, 1990, petition by State of Tennessee on Relation of Ms. Scott against Mark Brown, seeking an order of paternity, support for Kara and reimbursement to the State for $582.66, the amount of Aid for Families with Dependent Children payments received by Ms. Scott, formerly Stephens.

6. September 28, 1990, motion to dismiss by Mr. Brown on the grounds of judicial estoppel by reason of Ms. Scott's allegation in the divorce proceedings.

7. October 5, 1990, State's response to motion to dismiss and motion for paternity blood tests.

8. October 19, 1990, order appointing guardian *ad litem* for Kara.

9. December 19, 1990, petition of guardian *ad litem* which "adopts by reference in its entirety the Petition for Paternity ... filed by the State of Tennessee, ex rel. Stephanie Scott against Mark Brown."

10. April 3, 1992, motion on behalf of the State and the guardian *ad litem* for a paternity blood test.

11. April 9, 1992, Mr. Brown's response to motion for blood tests.

12. File date not shown, petition of guardian *ad litem* in the Chancery Court asking the Court to ratify and confirm its order of August 30, 1986, declaring that Mr. Stephens is not Kara's father.

13. June 13, 1992, order ratifying and confirming previous order of August 30, 1986.

14. February 17, 1993, order overruling motion to dismiss and granting motions seeking a blood test.

15. March 4, 1993, answer of Mr. Scott again advancing the defense of judicial estoppel and demanding a jury.

16. March 5, 1993, motion by State to compel compliance with order of blood test.

17. April 26, 1995, motion to enter an order of paternity against the Respondent pursuant to T.C.A. 24–7–112(b)(2)(B), which included an exhibit showing the probability of the Respondent's paternity to be 99.99 percent.

18. June 19, 1995, Mr. Brown's response to State's motion seeking declaration of paternity, contending that the case was removed from the Juvenile Court of Bradley County to the Circuit Court by virtue of a jury demand pursuant to T.C.A. 36–2–106.[1]

**1.** As pertinent, T.C.A. 36–2–106(a) provides the following:

If the defendant demands a jury trial or if determined upon the juvenile judge's own mo-

19. August 29, 1995, order of Juvenile Court transferring case to the Circuit Court.

20. August 29, 1995, motion *in limine* filed in Circuit Court by Mr. Scott seeking to exclude the results of the blood test on the ground that the request was too late and to prohibit Ms. Scott from introducing any papers as proof to establish paternity on the grounds of judicial estoppel.

21. August 31, 1995, State's response to the motion *in limine*.

22. October 6, 1995, order of the Circuit Court denying the Respondent's motion *in limine* and finding that judicial estoppel does not "apply in this case," and granting the State's motion for summary judgment. The Court further found without the introduction of any proof that pursuant to T.C.A. 24–7–111, which he found to be procedural and applicable to the disposition of this case that the Respondent was the father of Kara. He thereupon remanded the case to the Juvenile Court for Bradley County for further proceedings.

■ We now turn to the issues on appeal. The first, we believe, is resolved by an unreported opinion of this Court, *Kyle v. Richardson,* filed in Knoxville on May 20, 1983. In a factual situation similar to the case at bar, we rejected the doctrine of judicial estoppel, and in doing so stated the following:

As heretofore stated, the defendant relies on judicial estoppel. Tennessee has long recognized the doctrine of judicial estoppel. It is said that as a matter of public policy a party will not be permitted to take inconsistent positions in legal proceedings. However, it is also recognized that each case must be decided on its on [sic] particular facts and circumstances. The doctrine is designed not so much to prevent prejudice resulting to the other party but to prevent prejudice resulting to the administration of justice if a party were allowed to swear one way one time and a different way another time. *Cothron v. Scott,* 60 Tenn.App. 298, 446 S.W.2d 533 (1969); *Bubis v. Blackman,* 58 Tenn.App.

619, 435 S.W.2d 492 (1968); *Monroe County Motor Co. v. Tennessee Odins [Odin] Ins. Co.,* 33 Tenn.App. 223, 231 S.W.2d 386 (1950).

A necessary component of this rule is that anything short of a willfully false statement of fact, in the sense of conscious and deliberate perjury, is insufficient to give rise to an estoppel and that the party is entitled to explain that the statement was inadvertent or inconsiderate or represents a mistake of law. *Hamilton Natl. Bank v. Woods,* 34 Tenn.App. 360, 238 S.W.2d 109 (1948); *State ex rel. Ammons v. City of Knoxville,* 33 Tenn.App. 622, 232 S.W.2d 564 (1950); *Monroe County Motor Co. v. Tennessee Odins [Odin] Ins. Co.,* supra; *D.M. Rose & Co. v. Snyder,* 185 Tenn. 499, 206 S.W.2d 897 (1947).

Mr. Brown attempts to distinguish *Kyle* on the ground that Mr. Richardson, who is alleged to be the father, acceded to the mother's request and, as set out in the opinion, "went to the Juvenile Clerk's office of Monroe County and filed a petition for legitimation of Carrie LeAnn Kyle. In this petition appellant stated under oath that he was the father of Carrie LeAnn Kyle and asked for the order of legitimation. Thereafter, the appellant refused to appear in court, apparently he was afraid he was going to be forced to pay child support."

Although the foregoing was mentioned in *Kyle,* given the fact that Mr. Richardson recanted, we do not believe this was determinative, but instead the resolution of the question was based upon the general principles regarding judicial estoppel.

■ Resolution of issue two turns upon the construction of T.C.A. 24–7–112 which, as pertinent to this issue, provides the following:

**24–7–112. Tests to determine parentage—Admissibility in evidence—Costs.—** (a)(1) In the trial of any civil or criminal proceeding in which the question of parentage arises, the court before whom the matter may be brought, upon the motion of

tion, the juvenile judge shall transfer the case to the circuit or chancery court for a jury trial upon the issue of paternity.

either party at the initial appearance, shall order that all necessary parties submit to any tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage. Tests for determining paternity may include any blood, genetic, or DNA test utilized by an accredited laboratory. Failure to make a timely motion for submission to such tests and comparisons shall constitute a waiver and shall not be grounds for a continuance. The results of such tests and comparisons, including the statistical likelihood of the alleged parent's parentage, if available, may be admitted into evidence as provided in subsection (b).

(2) During any civil proceeding in which the question of parentage arises, upon the motion of either party or on the court's own motion, the court shall, at such time as it deems equitable, order all necessary parties to submit to any tests and comparisons which have been developed and adapted for purposes of establishing or disproving parentage. Tests for determining paternity may include any blood, genetic, or DNA test utilized by an accredited laboratory. Failure of either party to make a motion for submission to such tests and comparisons shall constitute a waiver and shall not be grounds for a continuance. The results of such tests and comparisons, including the statistical likelihood of the alleged parent's parentage, if available, may be admitted into evidence as provided in subsection (b).

In *Davis v. Davis,* 1996 WL 12584 an unreported opinion of this Court, filed in Knoxville on January 11, 1996, Judge Franks reviewed cases addressing the statute and concluded that the ordering of a blood test lay within the discretion of the trial court:

According to the straightforward language of the first provision, the mother waived her right to the tests by not raising the matter in her complaint. The second provision, however, leaves the judge with discretion. No cases have reconciled these two provisions, cf. *Steioff v. Steioff,* 833 S.W.2d 94 (Tenn.App.1992) (rejecting a father's argument that his motion for DNA testing met the initial appearance require-

ment when it was made at a trial for contempt when he failed to pay child support that had been set at an earlier divorce proceeding); *State ex rel. Overton v. Taylor,* 786 S.W.2d 942 (Tenn.1990) (demand for paternity testing must be made at initial appearance of demanding party in juvenile court only if issue is tried in juvenile court; if it is transferred to circuit court for trial, a motion for testing at the initial appearance in that forum is timely because it is effectively "the court before whom the matter may be brought"); *Williams v. Campbell,* 1995 WL 429265 (Tenn.App. 1995) (a father, who discovered there was a question of paternity after the divorce and the order of child support, should have been granted DNA tests when he raised the issue initially at his later paternity suit).

Construing these provisions *in para materia,* we conclude that (a)(1) requires that the Judge order testing if one of the parties raises the issue in the initial pleading. If the issue is raised later, (a)(2) grants the Trial judge discretion in deciding whether the testing should take place.

We conclude that under the facts of the present case the act of the Trial Judge in granting a motion to require a blood test which was filed subsequent to Ms. Scott's initial appearance, manifests the fact that the Trial Judge was exercising his discretion, and also find that he did not abuse his discretion.

■ In support of issue number three, Mr. Brown argues that the Court improperly gave retrospective effect to a 1994 amendment which contained the conclusive presumption feature found in T.C.A. 24–7–112(b)(2)(B), which provides the following:

(B) An individual is conclusively presumed to be the father of a child if blood, genetic, or DNA tests show that the statistical probability of paternity is ninety-nine (99%) or greater. A rebuttable presumption of the paternity of an individual is established by blood, genetic, or DNA testing showing a statistical probability of paternity of that individual at ninety-five percent (95%) or greater.

We first note that as a general rule legislative enactments are presumed to operate prospectively. *Cates v. T.I.M.E., DC, Inc.,* 513 S.W.2d 508 (Tenn.1974). The Rule, however, is qualified if the statute expresses a contrary intent, *State v. Brimmer,* 876 S.W.2d 75 (Tenn.1994), or if it is remedial or procedural in nature, *Kee v. Shelter Ins.,* 852 S.W.2d 226 (Tenn.1993), and does not disturb vested rights or contractual obligations. *Kuykendall v. Wheeler,* 890 S.W.2d 785 (Tenn.1994).

Our reading of the statute in question persuades us that it falls in the procedural category in that it addresses the presumption to be raised by evidence introduced. It could hardly be argued that Mr. Arnett has a vested right to exclude evidence disclosed by DNA testing.

In conclusion, we observe that we are not called upon to determine the constitutionality of the statute. Moreover, in the absence of proof, we can only speculate whether a brother or an identical twin brother of an alleged father would have similar DNA readings with the alleged father, resulting in the anomalous prospect of two persons being conclusively presumed to be the father of one child.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded to the Circuit Court for Bradley County that it in turn may be remanded to the Juvenile Court for further necessary proceedings incident to the petition. Costs of appeal are adjudged against Mr. Brown and his surety.

FRANKS, J., and WILLIAM H. INMAN, Senior Judge, concur.