# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE

## RICHARD DIETZ, II, EXECUTOR OF THE ESTATE OF BARBARA DIETZ, ET AL. v. CHARLES A. KEITH, ET AL.

**Direct Appeal from the Chancery Court for Sullivan County**
**No. 15-216     Richard E. Ladd, Chancellor**

---

**No. E1999-00927-COA-R3-CV - Decided April 24, 2000**

---

Barbara Dietz[1] and Jose Flores, former corporate officers of MiniFibers, Inc. ("the corporation"), brought this action after the corporation terminated their employment. They contend that they are each entitled to one-third of the outstanding common stock of the corporation. The trial court granted the defendants – the corporation and Charles A. Keith -- summary judgment, holding that the plaintiffs were judicially estopped from claiming any ownership interest in the corporation. The plaintiffs appeal, arguing that the defendants are not entitled to summary judgment. The defendants, on the other hand, argue that summary judgment is appropriate on one or more of the following grounds: (1) judicial estoppel; (2) statute of limitations; (3) laches; (4) equitable estoppel; and (5) that the promise to transfer stock is an unenforceable gift. We vacate the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

SUSANO, J., delivered the opinion of the court, in which GODDARD, P.J., and FRANKS, J., joined.

Cherie S. Adams and Jill R. Rayburn, Kingsport, Tennessee, for the appellants, Richard Dietz, II, Executor of the Estate of Barbara Dietz, and Jose Flores.

Cecil W. Laws and W. Carr Hagan, Jr., Kingsport, Tennessee, for the appellees, Charles A. Keith and MiniFibers, Inc.

Paul G. Summers, Attorney General and Reporter, Stuart Wilson-Patton, Assistant Attorney General, for the State of Tennessee.

---

[1]Barbara Dietz died during the pendency of this litigation, and Richard Dietz, II, the executor of her estate, was substituted as plaintiff in her stead. When we refer to "the plaintiffs" in the context of the facts of this case, we are talking about the original plaintiffs, Barbara Dietz and Jose Flores. However, when we use this reference in connection with the arguments on appeal, we are referring to the present plaintiffs-appellants.

# OPINION

There are a number of affidavits in the record. We are also presented with material developed in discovery. Taking the strongest legitimate view of the evidence in favor of the plaintiffs, *see **Byrd v. Hall,*** 847 S.W.2d 208, 210-211 (Tenn. 1993), we find the following to be a fair recitation of the operative facts. We include the procedural history of this litigation.

## I. *Facts and Procedural History*

In 1983, the majority shareholder of the corporation, G.B. Keith, died testate, leaving 49 shares of the corporation's common stock to his son, Charles A. Keith.[2] The remaining outstanding shares were held by Charles A. Keith's uncle, C.R. Keith. After G.B. Keith's death, C.R. Keith advised Charles A. Keith that he desired total ownership of the corporation's stock; Charles A. Keith resisted his uncle's request.

In July, 1984, Charles A. Keith, Dietz, and Flores talked by telephone. In that conversation, Keith proposed an arrangement by which each of the plaintiffs, along with C.R. Keith and himself, would become equal owners of the corporation. At the time, Dietz was the assistant general manager of the corporation, and Flores was a consultant to the corporation. The plaintiffs agreed to such an arrangement. However, C.R. Keith objected because he still hoped to own all of the stock himself. Charles A. Keith then proposed to the plaintiffs an arrangement whereby Charles A. Keith, Dietz, and Flores would each ultimately become one-third shareholders in the corporation. Keith proposed that he and the plaintiffs share equally in control of the corporation and receive equal salaries and bonuses. The plaintiffs agreed. Thereafter, Dietz became the President of the corporation, Keith became its Vice-President, and Flores joined the corporation as its Secretary-Treasurer. Keith, Dietz, and Flores constituted the board of directors, of which Dietz was chairman. Dietz and Flores continued in their capacities as officers and directors from August, 1984, until their terminations in December, 1997.

In 1985, the corporation had purchased C.R. Keith's 15 shares; thus, in 1987, when Charles A. Keith received the 49 shares inherited from his father, he became the sole record shareholder of the corporation. Although Keith did not transfer the stock to the plaintiffs at that time, he continued to reassure them, by his words and actions, that the three of them were equal owners of the corporation. Keith, Dietz, and Flores received substantially equal salaries, bonuses, access to borrowing and other benefits from the corporation. Each party had access to accounts for personal expenses to be paid by the corporation. The plaintiffs, acting in the belief that they were one-third owners of the corporation, executed personal guaranties to secure the repayment of loans made to the corporation in excess of one million dollars.

---

[2]G.B. Keith owned a total of 52.5 shares; 3.5 shares were eventually purchased by the corporation and converted to treasury stock.

As previously indicated, the plaintiffs were terminated in December, 1997. This was their first indication that Keith did not intend to transfer the stock as promised. On March 10, 1998, Dietz and Flores filed this action, seeking (1) a declaration that Dietz, Keith, and Flores are equal owners of the stock of the corporation as partners, joint venturers, or otherwise; (2) a declaration that Keith holds two-thirds of the corporation's stock in trust for the plaintiffs; (3) an order directing the defendants to transfer two-thirds of the corporation's stock to the plaintiffs; (4) a declaration that Keith's termination of the plaintiffs was unauthorized and without effect; (5) an order directing the defendants to reinstate the plaintiffs as officers and directors of the corporation; (6) a temporary restraining order to prevent the defendants from paying Keith in excess of his annual salary pending resolution of the litigation; (7) a temporary restraining order to prevent Keith from selling or transferring the stock; (8) a temporary restraining order to prohibit Keith from voting the stock of the corporation; and (9) damages to compensate them for lost wages and employee benefits. The plaintiffs based their claims on two principal theories: (1) that Dietz and Flores were equal partners or joint venturers with Keith in ownership of the corporation and, as such, Keith held the stock in trust for them; and (2) promissory estoppel.

The defendants each filed an answer, asserting several defenses, including failure to state a claim upon which relief can be granted; the statute of frauds; unclean hands; the statute of limitations; waiver and estoppel; laches; and that the plaintiffs were employees-at-will. Keith denied that he had proposed equal ownership of the stock to the plaintiffs. The defendants then moved for summary judgment, arguing that there are no genuine issues of material fact and that the defendants are entitled to a judgment as a matter of law. The defendants submitted a statement of undisputed facts under Rule 56.03, Tenn.R.Civ.P.; excerpts from the depositions of Dietz and Flores; numerous exhibits; and the affidavits of Charles A. Keith and Robert Justice, the latter being the corporation's chief financial officer. The plaintiffs responded by affidavit, disputing facts set forth by the defendants. The plaintiffs also set forth a number of facts that they alleged are material to the disposition of this matter.

A hearing on the summary judgment motion was held on April 13, 1999. The trial court granted the defendants' motion on the basis of judicial estoppel.[3] The trial court predicated its finding that the defendants are entitled to summary judgment on marital dissolution agreements executed by the plaintiffs in their respective divorce proceedings several years earlier. The trial court noted that when Flores was granted an irreconcilable differences divorce on January 25, 1985, his present claim of ownership of stock in the corporation was not reflected in his marital dissolution agreement. The trial court also noted that when Dietz was granted an irreconcilable differences divorce on October 4, 1991, the marital dissolution agreement submitted in that proceeding did not reference Dietz's claim of ownership in the corporation. The trial court then stated the following:

> The trial court must affirmatively find in divorce matters on the
> grounds of irreconcilable differences that the parties have made an

---

[3]As to the other grounds raised by the defendants, the trial court determined that summary judgment was inappropriate because it found genuine issues of material fact.

equitable settlement of any property rights between the parties, and the court cannot grant a divorce on the grounds of irreconcilable differences unless it so finds and implicitly the trial court must therefore have all the information on the respective property rights of the parties.

*    *    *

At the time the Plaintiffs were before the court in their respective divorce suits, each of them, according to their current claims, had a chose in action or rights to claim ownership in MiniFibers, Inc., but they failed to mention this right or chose in action in their divorce settlement agreement or marital dissolution agreement.

*    *    *

A failure of the Plaintiffs to include in their settlement agreement or marital dissolution agreement, which were incorporated into their respective divorce decrees, their claims to ownership rights in MiniFibers, Inc., was an affirmative misrepresentation to the court, and therefore binding on the Plaintiffs in the case *sub judice*.

This appeal followed.

## II. *Summary Judgment*

In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56.04, Tenn. R. Civ. P. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd,* 847 S.W.2d at 210-11.

Thus, the questions a court must consider in determining whether to grant or deny a motion for summary judgment are (1) whether a factual dispute exists; (2) whether that fact is material; and (3) whether that fact creates a genuine issue for trial. *Id.* at 214. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Id.* at 215. A disputed material fact creates a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.* The phrase "genuine issue" refers exclusively to factual issues and not to legal conclusions that could be drawn from the facts. *Id.* at 211.

The party seeking summary judgment has the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Id.* at 215. Generally speaking, a defendant seeking summary judgment may meet this burden in one of two ways: (1) by affirmatively negating an essential element of the plaintiff's case, or (2) by conclusively

-4-

establishing an affirmative defense. *Id.* at 215 n.5. "A conclusory assertion that the nonmoving party has no evidence is clearly insufficient." *Id.* at 215.

Once the moving party satisfies its burden of showing that there is no genuine issue of material fact, the burden then shifts to the nonmoving party to show that there is a genuine issue of material fact requiring submission to the trier of fact. *Id.* The nonmoving party cannot simply rely upon its pleadings, but rather must set forth, by affidavit or discovery materials, specific facts showing a genuine issue of material fact for trial. Rule 56.06, Tenn. R. Civ. P.; *Byrd,* 847 S.W.2d at 215. The evidence offered by the nonmoving party must be admissible at trial but need not be in admissible form; the nonmovant's evidence must be taken as true. *Byrd,* 847 S.W.2d at 215-16.

A trial court's grant of summary judgment, being a question of law, is reviewed on appeal *de novo* with no presumption of correctness. *Gonzales v. Alman Constr. Co.,* 857 S.W.2d 42, 44 (Tenn.Ct.App. 1993). If there is a genuine dispute as to any material fact or any doubt as to the conclusions to be drawn from the undisputed material facts, we must vacate the order granting summary judgment. *See Byrd,* 847 S.W.2d at 211.

### III. *Judicial Estoppel*

We address first the propriety of the trial court's grant of summary judgment on the basis of judicial estoppel.

Judicial estoppel is an equitable doctrine designed to prevent a party from gaining an unfair advantage by taking inconsistent positions on the same issue in different lawsuits. *Carvell v. Bottoms,* 900 S.W.2d 23, 30 (Tenn. 1995). It is applicable when a person has made a statement of fact under oath in a prior judicial proceeding and subsequently attempts to contradict that statement in a later proceeding. *Decatur County Bank v. Duck,* 969 S.W.2d 393, 397 (Tenn.Ct.App. 1997). "The doctrine of judicial estoppel applies only where there has been a willful misstatement of fact – that is, perjury." *Werne v. Sanderson,* 954 S.W.2d 742, 745 (Tenn.Ct.App. 1997)(quoting *Woods v. Woods,* 638 S.W.2d 403, 406 (Tenn.Ct.App. 1982)). A statement short of a willful misstatement is insufficient to invoke judicial estoppel. *State ex rel. Scott v. Brown,* 937 S.W.2d 934, 936 (Tenn.Ct.App. 1996).

It is undisputed that each of the plaintiffs signed a marital dissolution agreement in their respective divorce proceedings -- Flores in 1985 and Dietz in 1991. It is likewise true that, in each divorce case, the trial court granted a divorce on the ground of irreconcilable differences. The plaintiffs acknowledge that neither of the marital dissolution agreements makes reference to any claim of ownership in the corporation.

At the time of the divorces -- and still today -- the basic irreconcilable differences divorce statute, *i.e.*, T.C.A. § 36-4-103, provided in subsection (b) that "[n]o divorce shall be granted on the ground of irreconcilable differences unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by written agreement...for the equitable settlement of any property rights between the parties." The judgments in the Flores and Dietz

divorce cases both include language reflecting substantial compliance with the requisite finding set forth in T.C.A. § 36-4-103(b).[4]

In holding that the facts before it showed that the defendants were "entitled to a judgment as a matter of law," *see* Rule 56.04, Tenn.R.Civ.P., the trial court recited a multi-layered rationale. First, the trial court opined, and we agree, that subsection (b) of the statute requires a trial court to make a threshold, affirmative determination that the parties' settlement is an "equitable settlement of any property rights between the parties." T.C.A. § 36-4-103(b). As the trial court recognized, such a finding is required, as a matter of law, before a court is authorized to grant a divorce on the ground of irreconcilable differences. The trial court reasoned that a court "has to have all the information on the respective property rights of the parties" in order to properly discharge its duty under the statute. The court then pointed out that neither marital dissolution agreement makes mention of any ownership interest -- or claim to such an interest -- in the corporation. Finally, the court found that the failure to mention, in the words of the court, "a very significant asset" amounted to "an affirmative misrepresentation to the Court," under the trial court's interpretation of the meaning of T.C.A. § 36-4-103(b).[5]

The trial court noted that the marital dissolution agreement in the Dietz divorce "is sworn to by the parties." It is true that the signatures of the parties to that document were

---

[4]The judgment in Flores' divorce provides, in pertinent part, as follows:

> The Court finds that there has been one child born to this marriage, Jason Flores, and that the parties have entered into a written agreement which agreement the Court finds to be fair and equitable and in the best interest of the parties and the parties' minor child.

The pertinent language in the Dietz's divorce judgment is as follows:

> The Court further finds that the written Marital Dissolution Agreement, filed as Exhibit A, entered into by the parties, makes a full, final and complete division of all marital assets and a full settlement of all rights and obligations arising from their marriage and same is fair, reasonable and equitable and should be approved.

[5]The plaintiffs argue on appeal that T.C.A. § 36-4-103, as interpreted by the trial court, violates due process. The Attorney General filed a brief on appeal, arguing that the Attorney General was not properly notified as required by Rule 24.04, Tenn. R. Civ. P. and Rule 32(a), Tenn. R. App. P. We agree with the Attorney General that because of the failure to notify the Attorney General, this issue is not properly before us. *See In re Adoption of Female Child, E.N.R.,* C/A No. 01A01-9806-CH-00316, 1999 WL 767795, at *4 (Tenn.Ct.App. M.S., filed September 29, 1999). In any event, our holding that this case is not ripe for summary judgment renders the constitutional argument moot.

-6-

*acknowledged* before a notary public. The acknowledgment is in the standard form;[6] however, it should be noted that the agreement does not contain language attesting to the truthfulness of the statements in it. There is nothing unusual or wrong with the use of this acknowledgment language in a marital dissolution agreement; we mention it simply to point out that the subject language is simply an acknowledgment under oath that one has signed a document and not an oath to the truthfulness of the statements in the agreement. Furthermore, and more importantly, there is no general language in the Dietz agreement reciting that the agreement addresses the disposition of all of the parties' property. In fact, the agreement is worded in a way that clearly indicates that not all of the parties' assets are *specifically* identified in it:

> Each party shall retain any and all savings, investments, money accounts, retirement plans and so forth in their separate names, free from any claim on the part of the other.

The Flores agreement, which is copied into, and thereby made a part of the language of, the divorce judgment,[7] also does not include an express recitation that the agreement addresses all of the parties' property. Furthermore, the Flores judgment does not recite the typing, if any, that appears in the agreement following the parties' signatures. The trial court pointed out that Flores had executed an affidavit dated November 9, 1984, that makes no mention of the claimed interest in the corporation. This is true, but there is absolutely no evidence in the record that this document was ever filed in court or otherwise presented to the trial court in connection with the Flores divorce case. On the contrary, the record reflects that this affidavit was discovered by the present litigants in the file of Flores' divorce attorney, John S. McLellan, III, who is now a circuit court judge. In Judge McLellan's affidavit, which is in the record now before us, he recites that to his knowledge the Flores affidavit was "never...presented as a statement in a judicial proceeding."

The trial court pointed out that the financial information in the Flores affidavit is the type of information that was then required to be set forth in affidavit form by the local rules of the

---

[6]The acknowledgment is as follows:

> Personally appeared before me, the undersigned, a Notary Public in and for the aforesaid State and County, the within named bargainor, Barbara Dietz, with whom I am personally acquainted (or whose identity was proved to me on the basis of satisfactory evidence) and who acknowledged execution of the foregoing instrument for the purposes therein contained.

[7]A copy of the agreement, as a separate document, is not included in the record before us.

divorcing court.[8]  In rendering its opinion from the bench, the trial court read from the local rule regarding the material to be included in the mandated affidavit:

> All assets owned by the parties shall include all real and personal property, tangible or intangible, titled jointly or individually, including all property acquired before the marriage, after marriage, after separation, and should also include a market value of the asset, any debt for which security exists, vested pension rights, cash value of insurance policies, claims for possible lawsuits and other similar items should be included.

The court then noted that "I don't know how you could be any more inclusive than that."  With respect to the never-filed Flores affidavit, the trial court observed that it, meaning the affidavit, "is an indication of why it was left out in the MDA."  This remark is not further explained.

The trial court's decision in this case is bottomed on the court's finding that Dietz and Flores made an "affirmative misrepresentation" with respect to their alleged ownership interest in the corporation.  In other words, if, as the plaintiffs now contend, they have an ownership interest in the corporation dating back to a pre-divorces conversation in 1984, then they misrepresented their assets in their respective divorces.

The problem with the trial court's reasoning is that the record before us does not contain any document from either divorce that includes a statement of the magnitude required for the application of the judicial estoppel doctrine.  Before the doctrine can be applied as a bar to a position in subsequent litigation there must be a willful misstatement to the court.  *See* ***State ex rel. Scott v. Brown***, 937 S.W.2d at 936.  We have equated the requisite statement with the factual predicate required for a finding of perjury.  ***Werne***, 954 S.W.2d at 745.

Before there can be a *misstatement*, there must first be a *statement*.  Before there can be a perjurious statement, there must be a sworn-to assertion.  In the instant case, we have neither the requisite statement nor an oath of truthfulness in either divorce proceeding.  As we have pointed out, neither marital dissolution agreement recites that it addresses all of the parties' assets.  The Dietz agreement does not contain an oath of truthfulness, and there is nothing in the record before us showing that the Flores agreement contains this particular kind of oath.  The Flores affidavit was never filed in court.  Therefore, we do not see how it can be considered as a statement to the court.  The record is otherwise devoid of any affirmative statement inconsistent with the plaintiffs' present position.  An absence of an assertion does not amount to the egregious conduct -- perjury -- required to apply the doctrine of judicial estoppel.

---

[8]The plaintiffs argue that, under the local rules, the required filing is only applicable to a "contested" hearing, which, of course, neither of these proceedings was.  We do not find it necessary to address this issue.

The doctrine of judicial estoppel is intended to apply only when a party has *clearly* made a sworn-to statement in an earlier proceeding that is inconsistent with a position that he or she is taking in subsequent litigation. We simply do not have the requisite statement in either divorce that would trigger the application of this doctrine.

Our ruling is limited to a holding that the papers now before us do not make out the defense of the bar of judicial estoppel. Obviously, the papers filed by the plaintiffs in the divorce proceedings are relevant to the issue of the nature and extent of their claimed ownership interest in the corporation at the time of the respective divorces. The significance of, and the weight to be given to, these filings in the divorce cases is for the trial court in the first instance.

IV. *Defendants' Issues*

The defendants argue that they are entitled to summary judgment on four other grounds: the statute of limitations; laches; equitable estoppel; and that the promise of stock is an unenforceable gift. We will address each of these grounds in turn.

First, the defendants argue that they are entitled to summary judgment because the plaintiffs' claims are barred by the six-year statute of limitations applicable to breach of contract actions. *See* T.C.A. § 28-3-109(a)(3) (1980). The statute of limitations begins to run on a breach of contract action when one of the contracting parties "demonstrates a clear, total repudiation of the contract." **Wilkins v. Third Nat'l Bank in Nashville,** 884 S.W.2d 758, 761 (Tenn.Ct.App. 1994). "Thus, the statute of limitations begins to run when a contracting party first knows or should know that the contract will not be performed." **Id.** at 762. The defendants argue that the statute of limitations began to run in March, 1987, when Keith received the corporation's stock from his father's estate but did not transfer any of the stock to the plaintiffs. It was then, the defendants contend, that the plaintiffs should have known that Keith did not intend to perform the purported contract. Thus, so the argument goes, the plaintiffs' claim is barred by the statute of limitations.

The defendants also contend that they are entitled to summary judgment because the doctrine of laches bars the plaintiffs' claims. The two essential elements of laches are negligence and unexcused delay by the plaintiff. **Consumer Credit Union v. Hite,** 801 S.W.2d 822, 825 (Tenn.Ct.App. 1990). In support of this argument, the defendants rely on **John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.,** 715 S.W.2d 41, 46 (Tenn. 1986), in which the Supreme Court held that the doctrine of laches barred a breach of contract action where the plaintiff gave no notice or demand for performance by the defendant for four years. The defendants argue that because the plaintiffs waited fourteen years to make demand on the alleged promise of stock by Keith, the doctrine of laches should apply.

We find that the facts do not support a grant of summary judgment to the defendants on the basis of the statute of limitations or laches. In opposition to the defendants' motion for summary judgment, the plaintiffs offered the following evidence, which we take as true. *See* **Byrd,** 847 S.W.2d at 215. Dietz testified in her deposition that she, Flores, and Keith continued to operate as equal partners in ownership of the corporation, pursuant to the parties' agreement, until

December, 1997. She further testified that Keith continuously reassured her and Flores, through his words and actions, that the three parties were equal partners. It was not until their termination in 1997 that they became aware that Keith did not intend to convey the stock to them. Construing the facts before us in favor of the nonmovant, the breach of the parties' contract did not occur until December, 1997, when Dietz and Flores first knew the contract would not be performed. *See Wilkins,* 884 S.W.2d at 762. The statute of limitations does not bar the plaintiffs' complaint.

The defendants next argue that they are entitled to summary judgment on the ground of equitable estoppel. The elements of equitable estoppel are set forth in *Consumer Credit Union v. Hite,* 801 S.W.2d 822 (Tenn.Ct.App. 1990):

> The essential elements of an equitable estoppel as related to the party estopped are said to be (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts. As related to the party claiming the estoppel they are (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

*Id.* at 825 (quoting *Callahan v. Town of Middleton,* 292 S.W.2d 501, 508 (Tenn.Ct.App. 1954)).

The defendants contend that equitable estoppel applies in the instant case because the plaintiffs represented for fourteen years that Keith was the sole shareholder of the corporation. In support of this argument, the defendants cite several documents, including tax returns, loan applications, and promissory notes executed by the plaintiffs.

We find that summary judgment on the basis of equitable estoppel is not appropriate. Taking the plaintiffs' proffered evidence as true, Keith promised to the plaintiffs in 1984 that he would transfer one-third of the corporation's stock to each of the plaintiffs. Thus, Keith cannot claim that he did not have knowledge, or the means of obtaining knowledge, of the true ownership of the stock. Furthermore, there is no evidence to suggest that the defendants detrimentally relied upon any "misrepresentations" made by the plaintiffs. Thus, we find the defendants' arguments on this issue to be without merit.

Finally, the defendants contend that they are entitled to summary judgment as a matter of law because, so the argument goes, the undisputed facts show that the promise of stock was a gift and is therefore unenforceable because there was no delivery.

-10-

A valid *inter vivos* gift requires (1) the intention to give the gift and (2) the delivery of the gift. **Figuers v. Sherrell,** 178 S.W.2d 629, 632 (Tenn. 1944). "There is no delivery unless the complete dominion and control of the gift is surrendered by the donor and acquired by the donee." **Pamplin v. Satterfield,** 265 S.W.2d 886, 888 (Tenn. 1954); **Figuers,** 178 S.W.2d at 632.

It is undisputed that Keith did not deliver the stock to the plaintiffs; thus, we agree with the defendants that the promise to transfer stock would be unenforceable as a gift. However, the plaintiffs do not rely on such a theory for their recovery. Rather, they argue (1) that the parties had agreed to be equal partners in the ownership of the corporation, or in the alternative, (2) that the plaintiffs are entitled to the stock under the doctrine of promissory estoppel. Thus, the fact that the promise of stock might be unenforceable as a gift does not entitle the defendants to summary judgment on the plaintiffs' claim of promissory estoppel. Construing the evidence in favor of the plaintiffs, the proof shows a promise relied upon by the plaintiffs and a change of position by them in reliance on that promise.

V.

The judgment of the trial court granting summary judgment to the defendants is vacated. This case is remanded for further proceedings. Costs on appeal are taxed to the appellees.