# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
April 20, 2010 Session

## JERRY ROBERTSON, A/K/A JERE ROBERTSON, v. CLARA ROBERTSON HODGES, ET UX., ET AL.

**Appeal from the Chancery Court for Sevier County**
**No. 05-5-201      Hon. Telford E. Forgety, Jr., Chancellor**

---

**No. E2009-01335-COA-R3-CV - FILED JUNE 28, 2010**

---

In this action plaintiff asked the Court to declare that he had an interest in property which he inherited by will, and for a partition and sale of the land. The Trial Court determined that plaintiff was judicially estopped to claim an interest in the land and dismissed the action. On appeal, we affirm the Judgment of the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  D. MICHAEL SWINEY, J., joined and JOHN W. MCCLARTY, J., dissented and filed an opinion.

Onnie Winebarger, Byrdstown, Tennessee,  for the appellant, Jerry Robertson, a/k/a Jere Robertson.

Jeffrey R. Murrell and James H. Ripley, Sevierville, Tennessee, for the appellees, Clara Robertson Hodges, et vir., et al.

Lars E. Schuller, Knoxville, Tennessee, for the appellees, Branch Bank and Trust Company and BB&T Collateral Service Corporation.

# OPINION

This is an appeal of the dismissal of a petition for partition and sale of land. Plaintiff, Jerry Robertson, a/k/a Jere Robertson (hereinafter Jerry Robertson) filed the petition for partition and sale of land on May 24, 2005 in the Chancery Court. The petition sought a declaration that Jerry Robertson, as an adopted son of Tillman Robertson, was a one half-owner of a certain tract of land in Sevier County and that an order of reference be made for an accounting and that the property be sold. Defendant, Clara Robertson Hodges, the daughter of Tillman Robertson, was alleged to be the other half-owner of the subject property. Clara Hodges' husband, Dwayne Hodges, was also a named defendant. Ray G. Hodges and Voletta Hodges, son and daughter-in-law of Clara Hodges, were made defendants as they lived on the subject property and had been conveyed a portion of the property by deed from Clara Hodges. Other defendants were named who had a leasehold or security interest in the property.

The petition alleged the land subject to the petition was devised to Tillman Robertson as a life interest with the remainder to go to the "heirs of law" by the will of Henry C. Butler. Tillman Robertson took possession of the property upon the death of Henry C. Butler and farmed and lived on the tract of land during his lifetime. Tillman Robertson died in 1990. Tillman Robertson had two children, plaintiff Jerry Robertson and defendant Clara Hodges. Jerry Robertson claims he and his sister Clara were "all the heirs at law" of Tillman Robertson. The petition alleges that Clara Hodges has controlled the property and collected rents, profits and proceeds from it. Further Clara Hodges was alleged to have conveyed approximately 3.53 acres of the property to Ray and Voletta Hodges. The petition prayed that the court find that Jerry Robertson and Clara Hodges are all the heirs at law of Tillman Robertson and that Jerry Robertson is one half owner of the property, and also establish any other interest. The petition asked for an accounting of the rents and profits derived from the property by Clara Hodges, and that she pay plaintiff one half of those rents and profits and, that the property be offered for sale.

The Hodges defendants filed an answer admitting that Jerry Robertson was the adopted son of Tillman Robertson and that, upon information and belief, Jerry Robertson was an heir at law of Tillman Robertson. The Hodges defendants raised the affirmative defenses of the statute of limitations, laches, estoppel and waiver.

Motions for summary judgment were filed, but all motions for summary judgment were denied.

By agreement of counsel and consent of the Trial Court, the matter was bifurcated and the trial was first to be conducted regarding whether Jerry Robertson had any interest in the land. If judgment was in Jerry Robertson's favor, the remaining issues regarding partition and sale would be tried.

The trial was held on May 19, 2009 before Chancellor Telford E. Forgety, Jr. and at the close of the hearing the Court ruled in favor of the defendants and provided extensive oral findings of fact and conclusions of law which were incorporated by reference in the final judgment.

The memorandum opinion provided the following findings:

1.      Jerry Robertson owns no interest in the property as of today.

2.      Based on the Court's interpretation of the *Corbitt*[1] case relied on by defendants, and the Court's opinion that the *Corbitt* definition of heir would apply in 1936 when the Butler will was probated, the Court stated that it believed Jerry Robertson would not be considered the heir at law of H. C. Butler. However, the Court seemed to express some concern about the correctness of this statement later in the opinion. At the very end of the opinion, the Court tried to clarify this issue and stated that "without question he [Jerry Robertson] was an heir at law of Tillman Robertson. . . . . Is he to be construed to be an heir at law, to have been the intended beneficiary as an heir at law under the Will of H.C. Butler, that was the real question. . . . I told you I think the *Corbitt* rule probably would have been the law in 1936, but I have not . . . my ruling on that ground.

3.      Jerry Robertson was told in 1958 by an attorney and by the clerk of court of Sevier County, who was his uncle, that under the will of H. C. Butler he would have a one half interest in the property at the death of his adoptive father, Tillman Robertson.

4.      Jerry Robertson was divorced after the death of Tillman Robertson and he did not disclose in the marital dissolution agreement that he had an ownership interest in the property. Further, he did not list the property in Schedule A of a bankruptcy petition he filed in 1993.

5.      The Trial Court stated that it could not "accredit" Jerry Robertson's

---

[1] *Union Planters v. Corbitt*, 474 S.W.2d 139 (Tenn. App. 1971).

explanation of why he did not disclose his ownership interest in the property in the divorce and bankruptcy proceedings. Jerry Robertson's explanation was after being told in 1958 by an attorney and by his uncle that upon Tillman Robertson's death, he would have an ownership interest in the property, he talked to another attorney, Wanda White, about the issue following the death of Tillman Robertson in 1990. Jerry Robertson claimed that Ms. White reviewed Tillman Robertson's will and possibly H. C. Butler's will and informed him that any claim he may have had to the property at the time of Tillman Robertson's death had expired due to his sister's occupancy of the property for more than six months. Based on this determination that Jerry Robertson's explanation of why he did not include the ownership interest in the property in the divorce and bankruptcy filings was not credible, the Court held that Jerry Robertson's claims were barred by the doctrine of judicial estoppel.

6.     The Trial Court also found that Jerry Robertson had lost whatever ownership interest he might have had in the property based on the adverse possession of his sister Clara Hodges. The judge held that Clara Hodges' statement to Jerry Robertson at the funeral of Tillman Robertson in 1990 that "Daddy left the farm to me" functioned as an ouster as he was on notice that Clara Hodges thought the farm was hers and that she was claiming it. The Court also stated that the evidence showed that for fifteen years, from 1990 to 2005 when the suit was filed, Clara Hodges and her husband lived on the property, farmed it, worked it every day, improved it by spending thousands of dollars on it, borrowed on it, sold one tract of it, leased another tract and collected rents. The Court concluded that the adverse possession statute of limitations had run against Jerry Robertson with respect to his claim of ownership of the property.

7.     The Court addressed the defendants' other defenses of laches and unclean hands and stated that Jerry Robertson should have asserted his claim "a long long time before he did". However the Court did not specifically state that it held that Jerry Robertson's claims were barred by the doctrines of laches or unclean hands. The Court only said that "there are multiple, multiple, as I said, multiple grounds here upon which the defendants prevail in this case, and I've touched upon those in my remarks."

8.     As to the claims against Ray and Voletta Hodges and BB&T, the Court held that Ray and Voletta Hodges "own their property in fee simple with good title and that, therefore, the mortgage with BB&T bank . . . is also good and valid.

9. The Court summarized its reasons for dismissing Jerry Robertson's claims as based on the doctrine of judicial estoppel, adverse possess, actual ouster, unclean hands and, vaguely stated "there is other defenses that apply even in the event that Jerry Robertson were to have been considered included in the class of people who would have taken as beneficiaries under the Will of H. C. Butler.

Jerry Robertson has appealed and raises these issues:

A. Did the Trial Court err in dismissing the petition upon a finding that the action was barred by the doctrine of judicial estoppel?

B. Did the Trial Court err in dismissing the petition upon a finding that plaintiff, as a co-tenant, was actually ousted and barred by adverse possession?

C. Did the Trial Court err in dismissing the petition upon a finding that it was barred by the doctrine of unclean hands?

D. Whether the Trial Court should have additionally found in favor of defendants because plaintiff was not an intended beneficiary of H.C.. butler and therefore, acquired no interest in the subject property?

A trial court's findings of fact in a non-jury trial are reviewed *de novo* upon the record. The trial court's findings are afforded a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13 (d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn. 1995). This Court reviews credibility determinations made by the trial court with great deference. *Keaton v. Hancock County Bd. of Educ.,* 119 S.W.3d 218, 223 (Tenn. Ct. App. 2003). The trial court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005)*, Union Carbide Corp. v. Huddleston* 854 S.W.2d 87, 91 (Tenn. 1993).

Appellant contends the Trial Court erred when it dismissed his petition upon a finding that his claim of ownership in the H.C. Butler Farm was barred by the doctrine of judicial estoppel. The fact that Jerry Robertson knew by 1958 that he had a property interest in the H.C. Butler Farm under the H.C. Butler will, should he outlive his adopted father Tillman Robertson, is undisputed. It is further undisputed that Jerry Robertson was required to make a disclosure of his assets in both his bankruptcy proceeding and the divorce from his wife

Vivian. It is likewise undisputed that Jerry Robertson, in sworn statements filed with the courts, failed to disclose his property interest in the H.C. Butler Farm in both of these proceedings. The Trial Court found that Jerry Robertson's failure to make such disclosures in the bankruptcy and divorce cases barred him from setting forth a claim to the property in the instant case under the doctrine of judicial estoppel.

Jerry Robertson's defense to the application of the doctrine of judicial estoppel was that he relied on the legal advice he received from Wanda White in 1992 that he had no claim to the property when he filed his sworn statements in the bankruptcy and divorce proceedings. The Trial Court clearly articulated that it did not "accredit" Jerry Robertson's account of his dealings with Wanda White when it found that appellant's claim to the property was barred by the doctrine of judicial estoppel.

The Tennessee Supreme Court recently discussed the doctrine of judicial estoppel in *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303 (Tenn. 2009) as follows:

> The distinctive feature of the Tennessee law of judicial estoppel (or estoppel by oath) is the expressed purpose of the court, on broad grounds of public policy, to uphold the *sanctity of an oath*. The *sworn statement* is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth. It is not merely an admission, but an absolute bar. *Marcus v. Marcus,* 993 S.W.2d 596, 602 (Tenn.1999) (emphases added) (quoting *Sartain v. Dixie Coal & Iron Co.,* 150 Tenn. 633, 266 S.W. 313, 318 (1924)). While the doctrine of judicial estoppel is applied to prohibit a party from taking "a position that is directly contrary to or inconsistent with a position previously taken by the party," *Guzman v. Alvares,* 205 S.W.3d 375, 382 (Tenn.2006), the doctrine generally only applies to "sworn statements made in the course of judicial proceedings." *Sartain,* 266 S.W. at 316; *accord Carvell v. Bottoms,* 900 S.W.2d 23, 30 (Tenn.1995) (noting that "parties are 'judicially estopped' from taking contrary sworn positions on the same issue in different lawsuits"); *Layhew v. Dixon,* 527 S.W.2d 739, 741 (Tenn.1975) (noting that "judicial estoppels are not favored and ordinarily do not arise out of mere unsworn pleadings").

*Epperson* at 314.

The elements necessary for the application of the doctrine of judicial estoppel are present in this case. Jerry Robertson made sworn statements in two judicial proceedings (the bankruptcy and divorce) wherein he did not list his interest in the H.C. Butler property. This failure to disclose his property interest is directly contrary to and inconsistent with his position in this suit, that he has a one-half ownership interest in the property pursuant to the

H. C. Butler will. His sworn oaths in the earlier proceedings are thus a bar to his claiming the property in this suit unless he can show that an exception to the doctrine applies.

This Court in *Gordon, ex. rel Gordon v. Draughn*, No. M2008-02224-COA-R10-CV, 2009 WL 1704470 (Tenn. Ct. App., Jun. 16, 2009) examined whether the omission of a medical malpractice claim from a bankruptcy petition judicially estopped the plaintiff, Ms. Gordon, from pursing the malpractice claim. *Gordon* at * 7. The Court in *Gordon* examined the doctrine of judicial as an exception to that doctrine as set forth by the Tennessee Supreme Court in *Sartain v. Dixie Coal & Iron Co.,* 266 S.W. 313 (Tenn. 1924):

> While the appellate courts of Tennessee have ... upheld and preserved the sanctity of an oath by the application of this principle [of judicial estoppel], yet, in order to avoid injustice, the severity of the rule has been tempered by this exception, viz.: If the party sought to be estopped can show that his previous statement under oath was made inadvertently or through mistake ... he will not be precluded by his former statement. *Id.* [*Sarain*] at 317-18; *see D.M. Rose & Co. v. Snyder,* 206 S.W.2d 897, 906 (Tenn.1947) (holding that "[w]hile judicial estoppel applies where there is no explanation of the previous contradictory sworn statement, it does not apply where there is an explanation showing such statement was inadvertent, inconsiderate, mistaken, or anything short of a 'willfully false' statement of fact") (internal citations omitted). "Anything short of 'conscious and deliberate perjury' is insufficient to give rise to the doctrine of judicial estoppel." *Echols v. Echols,* 2007 WL 1756711, at *3 (Tenn. Ct.App. June 19, 2007) (citing *State ex rel. Scott v. Brown,* 937 S.W.2d 934, 936 (Tenn.Ct.App.1996)). "A trial court's application of the doctrine of judicial estoppel presents a question of law." *Frazier v. Pomeroy,* 2006 WL 3542534, at *10 (Tenn.Ct.App.2006).

*Gordon* at * 5 - 6.

The doctrine of judicial estoppel does not apply to anything short of a willfully false statement of fact and a litigant is entitled to have an opportunity to explain that a prior statement was inadvertent, made inconsiderately, or based on a mistake of fact or law before the doctrine of judicial estoppel can be applied. *Frazier v. Pomeroy,* No. M2005-00911-COA-R3-CV, 2006 WL 3542534, 10 -11 (Tenn.Ct.App. Dec. 7, 2006)(citing *State ex rel. Scott v. Brown,* 937 S.W.2d 934, 936 (Tenn.Ct.App.1996); *State ex rel. Ammons v. City of Knoxville,* 33 Tenn.App. 622, 630-31, 232 S.W.2d 564, 567-68 (1950); *Estate of Boote,* 198 S.W.3d 699, 719-20 (Tenn.Ct.App.2005)).

Jerry Robertson sought to explain his failure to disclose his interest in the H.C. Butler Farm in the earlier litigations by explaining that Ms. White had told him in 1992 or 1993 that

he had lost any claim to the property that he may have had. According to Robertson, he relied on this legal advice from Ms. White when he failed to list the H.C. Butler Farm as an asset in his divorce and bankruptcy cases.

The Trial Court stated it did not believe Robertson's explanation regarding his dealings with Wanda White and held that the petition was barred by the doctrine of judicial estoppel. Given the deference this Court must attribute to the findings of credibility made by the Trial Court, we do not disagree with the Trial Court for the following reasons.

Jerry Robertson's statements regarding his brief consultation with Ms White are vague and unsubstantiated. He claims that he went to see her in her office on the court house square in Brydstown in 1992 about a collection matter. At the same time he asked her to review the H.C. Butler will regarding any rights he may have had under it. He claims that as he happened to pass by Ms. White's office a short time later, she called him and told him that he had lost his rights to the farm because his sister had lived on the farm for more than six months after Tillman Robertson's death. He claims that Ms. White showed him a law book that so provided and that he read the law in the book. Neither Robertson, nor his counsel, offered any suggestion as to what principle of law Ms. White supposedly relied on when she offered this advice. Ms. White's deposition was entered into evidence, but she did not substantiate any of Jerry Robertson's account of his dealings with her. The most she could say was that she had an office in the place described by Mr. Robertson between 1990 and 1991 and that she had a casual, but not a professional, acquaintance with him. She had no recollection or records of giving him any legal advice and she had never seen a copy of the H. C. Butler will. Notably, Ms. White testified that she had moved her office to a different location than described by Mr. Robertson by 1992, when he claimed to have visited her in that office. Further, Mr. Robertson attempted to rely on his son Mitchell to verify his account of the legal advice provided by Ms. White. Mitchell Robertson was unable to do so.

Given the vague and unsubstantiated nature of Jerry Robertson's explanation of why he "mistakenly" did not list his interest in the H.C. Butler Farm as an asset in his divorce and bankruptcy cases, we hold the Trial Court did not err when it did not "accredit" Robertson's testimony on the issue. His position in this case is clearly inconsistent with the sworn statements he made in the two prior court cases, and we affirm the Trial Court's dismissal of plaintiff's petition, based on a finding of judicial estoppel should be affirmed.

Upon this holding, the remaining issues raised on appeal are moot and are pretermitted.

In conclusion, we hold the Trial Court was correct in determining Robertson's claims in this matter were barred by the doctrine of judicial estoppel, and we affirm the Judgment

of the Trial Court dismissing this suit.  The cost of this appeal is assessed to Jerry Robertson.


_____
HERSCHEL PICKENS FRANKS, P.J.