# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **DECATUR COUNTY BANK**, | ) | Decatur County Chancery Court |
|  | ) | No. 2032 |
| Plaintiff/Counter-Defendant/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 02A01-9603-CH-00057 |
|  | ) |  |
| **WELBORN B. DUCK**, | ) |  |
|  | ) | **FILED** |
| Defendant/Counter-Plaintiff/Appellant. | ) |  |
|  | ) | **August 19, 1997** |
| AND | ) |  |
|  | ) | **Cecil Crowson, Jr.** |
| **CECIL DUCK**, | ) | Appellate Court Clerk |
|  | ) |  |
| Defendant. | ) |  |

_____

From the Chancery Court of Decatur County at Decaturville.
**Honorable Walton West, Chancellor**


**Welborn B. Duck**, Pro Se

**Edwin Townsend**, TOWNSEND AND TOWNSEND, Parsons, Tennessee
Attorney for Plaintiff/Counter-Defendant/Appellee.


OPINION FILED:

**AFFIRMED AND REMANDED**


**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**HIGHERS, J.**: (Concurs)

Appellee, Decatur County Bank (Bank), filed suit against Appellant, Welborn B. Duck (Duck), for reformation of a trust deed and default upon four promissory notes. Bank specifically alleged that Duck was in default on a note dated October 10, 1986 in the principal amount of $59,518.73; a note dated June 27, 1988 in the principal amount of $1,003.10; a note dated March 21, 1988 in the principal amount of $25,043; and a note dated March 23, 1989 in the principal amount of $6,000,[1] for a total principal indebtedness of $91,564.83. Bank alleged that the first 3 notes were secured by deeds of trust dated August 16, 1982 and that the March 21, 1988 note was additionally secured by a separate deed of trust dated that same day. Duck filed an answer, pro se, wherein he conceded his indebtedness to Bank to the extent of $59,518.73, but denied owing any additional monies or that reformation was necessary. It was asserted that the August 16, 1982 trust deeds did not act to secure the promissory notes and were void. Duck also filed a counterclaim alleging that the additional monies (above the $59,518.73 amount) were borrowed under "false pretenses" as it was agreed they were merely "the first installments of the additional money promised by [Bank] to continue the development of [Duck's properties for his fish farming ventures]." Bank denied any agreement with Duck other than that as expressed in the deeds of trust and notes sued upon. Pursuant to motion, the trial court entered a partial summary judgment in favor of Bank in the amount of $59,518.73 based upon Duck's sworn pleadings, which had not been amended.[2] Bank then filed a motion for summary judgment asserting its entitlement to such relief on grounds of judicial and equitable estoppel, estoppel of record, the statute of frauds, violation of the parol evidence rule and the statute of limitations. The trial court granted summary judgment in favor of Bank on several grounds and dismissed Duck's counterclaim. Duck has appealed, presenting what we perceive to be the single issue of whether the trial court was correct in granting the summary judgment. For reasons set forth below, we affirm.

The following facts are not in dispute: On August 16, 1982, Duck borrowed $28,000 from Bank evidenced by a promissory note secured by two deeds of trust covering properties in Decatur and Perry Counties, respectively. Each trust deed contains the following provision:

---

[1]Cecil Duck was joined as a defendant in the suit as a cosigner of the fourth note. He has not appealed from the judgment of the trial court and is not a party to this appeal.

[2]It appears from the record that after obtaining counsel Duck filed an amended answer wherein he denies owing this amount.

> That is to say, I am justly indebted to [Bank] in the amount of $28,000.00 as evidenced by my promissory note of even date with this instrument, and due six months with interest from date; and to secure and make certain the payment of this note according to its terms, or for any renewals, extensions, or additional advances not to exceed a total indebtedness of $65,000.00 that might be granted us under the life of this instrument, this deed of trust is executed.

The deed of trust describing the Perry County property identifies "40 acres, more or less."[3] The other deed of trust describes the Decatur County property as containing thirteen acres but expressly excludes therefrom an undivided one-half interest in 3.3 acres of the tract previously conveyed to Duck. It is the latter trust deed which Bank seeks to reform to delete any reference to the exclusion. In August 1985, Duck paid off the original loan amount of $28,000. The trust deeds were not released. A few months later, Duck began borrowing additional funds from Bank from time to time with various payments made thereon. On October 10, 1986, the different loan amounts were reduced to one note, totaling $59,518.73. The note states that it "is secured by a separate D/T Comm. and Farm . . . Res. R.E. dated 8-16-82." A promissory note in the amount of $1,003.10 was executed by Duck on June 27, 1988. It indicates that the loan amount was "Adv. under D.T. dtd 8/16/82 (2)" and that "this note is secured by 2 separate D/T R.E. (Perry and Dec. Cos.) dated 8/16/82." On March 21, 1988, Duck executed a promissory note in favor of Bank in the amount of $25,043. The note indicates that it is secured by a deed of trust dated 3/21/88 and further states "Adv. under D/T (2) dated 8/16/82."[4] Finally, on March 23, 1989, a personal loan of $6,000 was made by Bank to Duck, evidenced by a promissory note which was co-signed by Cecil Duck. In his deposition, Duck admits to receiving the funds from Bank as designated in the notes.

After obtaining counsel Duck filed an amended counterclaim asserting that the parties had agreed that Bank would loan him up to $65,000 for each of the properties conveyed under the 1982 trust deeds; that in August 1985, he paid off his loan in full and had a "zero balance due" and believed that the mortgages on the properties had been released; that in October 1985 Duck informed Bank that he would be willing to put up both pieces of his property as collateral for funding to

---

[3]The trust deed granted Bank a second mortgage on the property.

[4]According to the affidavit of Bank president, James A. England, the 1988 deed of trust was executed because the amount loaned ($25,043), in addition to the other monies loaned, exceeded the $65,000 limitation on additional advances under the 1982 trust deeds. The latter deed of trust also granted Bank a first mortgage on the forty acre tract in Perry County.

complete his fish farming venture and that Bank agreed to do so; that in the first part of 1989, Bank informed Duck that he would have to sell some of his assets "in order to satisfy the Bank examiners before . . . [B]ank would advance him any more money"; that as a result, Duck agreed to sell the 3.3 acres of Decatur County property and made arrangements for an auction of the property; that Bank refused to release the property to the buyers at the auction, stating it had received a higher offer; that on February 15, 1985, Bank president England falsified and changed the amount on a loan form dated that day; that Bank violated state law by failing to release the paid off mortgages and by failing to create a new mortgage after a new loan agreement was entered into regarding the Decatur County property; that Bank took possession and sold the Decatur County property to itself without a valid deed of trust; that Bank "made such promises and assurances to [Duck] that were of a nature to cause him to rely upon such promises with the understanding that he could and would receive adequate financing to complete all of his projects related to his various enterprises"; and that Bank reversed its position regarding its agreement for future advances to Duck at a time when he had no other means of obtaining financing. As a result, Duck alleged that Bank was liable for negligence, breach of contract, conversion, trespass, fraudulent and/or negligent misrepresentation, fraudulent and/or negligent inducement to contract and slander of title. Duck sought, *inter alia*, monetary damages in the amount of $250,000 and a bill quieting title to the Decatur and Perry County properties.

In support of its motion for summary judgment, Bank relied upon various portions of the pleadings and exhibits thereto, Duck's deposition and the affidavits of James England and James Smith. Exhibit 10 to Bank's complaint is a disclosure statement filed by Duck, through counsel, in January 1990 in the bankruptcy court wherein Duck sought Chapter 11 protection. In it, Duck acknowledges Bank's "lien on approximately 40 acres of real estate . . . in Perry County, . . . and approximately 13.9 acres of real estate . . . in Decatur County" and that "[t]hese two tracts secure an indebtedness of approximately $91,500.00." Duck identified no unsecured creditors. The record also includes Duck's bankruptcy petition (schedule of liabilities), filed under penalty of perjury, acknowledging Bank as a secured creditor to the extent of $91,500. The schedule describes the security held by Bank as "40 acres, in Perry County, TN" and "13.9 acres in Decatur County, TN." It is signed by Duck and dated September 12, 1989. The record further includes a proof of

claim filed by Bank in the bankruptcy court for a total amount of $91,564.83 plus accrued interest.[5]

In granting Bank's motion for summary judgment, the trial court ruled that Duck is judicially estopped to deny the validity of his indebtedness to Bank because of the Chapter 11 bankruptcy petition wherein he "fully recognized the indebtedness to Bank as being $91,500.00, . . . and confirmed that it is secured by 40 acres in Perry County and 13.9 acres in Decatur County." The court further found the language of the documents sued upon (with the exception of the $6,000 loan) to clearly and unambiguously represent additional advances to Duck under the August 16, 1982 trust deeds as each specifically referred to the two trust deeds and "stat[ed] by plain language that same are secured thereby . . . ." Consequently, the court held that parol evidence could not be used to vary or contradict the plain language of the documents (including the $6,000 promissory note). The court held that Duck was both judicially and equitably estopped to assert any of the claims in his counterclaim for the foregoing reasons and, additionally, for never objecting to further transactions between himself and Bank as being secured by the 1982 trust deeds until Bank notified him in December 1990 of the alleged error or mistake in the description of the 13 acre tract. The court also found that the statute of frauds, specifically T.C.A. § 29-2-101(b)(1), precluded Duck from asserting any action for Bank's alleged breach of an agreement to lend money or extend credit for an amount other than that as expressed under the written terms of the promissory notes in question.

In considering a motion for summary judgment, we are to take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in their favor, and discard all countervailing evidence. If a dispute exists as to any material fact or any doubt as to the conclusions to be drawn from that fact, we must deny the motion. *Clifton v. Bass*, 908 S.W.2d 205 (Tenn. App. 1995). It has remained Duck's position throughout these proceedings that once the original loan of $28,000 was repaid without him receiving any additional advancements up to $65,000 as of the date of payoff, Bank was obligated at that time to execute a formal deed of release. Thus, Duck maintains that Bank was unsecured as to the additional loans made. However, the statements made by Duck under penalty of perjury in the bankruptcy proceeding establishing his indebtedness to Bank in the amount of $91,500 and that such indebtedness is secured by the two

---

[5]Bank listed a secured claim in the amount of $85,564.83 plus interest and a $6,000 plus interest unsecured claim.

tracts of land in question contradict such assertion. We agree with the trial court that such statements operate to estop Duck from denying his indebtedness under the doctrine of judicial estoppel. The law of judicial estoppel ordinarily applies to one who has made oath to a state of facts in a former judicial proceeding which in a later proceeding he undertakes to contradict. ***Allen v. Neal***, 396 S.W.2d 344, 346 (Tenn. 1965). The doctrine is intended to suppress fraud and prohibit the deliberate shifting of position to suit the exigencies of each particular case that may arise concerning the subject matter in controversy. ***Carter v. E.T. & W. N. C. Transp. Co.***, 243 S.W.2d 505, 509 (Tenn. App. 1949).

Moreover, the language of the documents themselves clearly and unambiguously reveal the circumstances under which these loans were made: that with the exception of the $6,000 personal loan, the monies were advanced in exchange for Bank's receipt of a security interest in the 2 properties in question as set out in the 1982 deeds of trust. With respect to the $6,000 personal loan, the language of the promissory note in regard thereto is equally clear and unambiguous. Although Duck argues that he should not be held responsible for the indebtedness due to alleged fraudulent representations by Bank that it would finance Duck's development of his fish farming operations until completion, no writing to this effect is found within the record. Clearly, the allegation cannot be pursued absent some writing memorializing same.[6] We conclude that the trial court was correct in entering summary judgment for Bank on the issue of Duck's indebtedness.

As to the issue of reformation, Bank's position is stated in the affidavit of Mr. England as follows:

> [Bank] at all times thought it had a first lien on the entire interest in the 13 acre tract of land described in the Deed of Trust dated August 16, 1982, and was not aware of the exclusion by the description of a

---

[6]T.C.A. § 29-2-101(b)(1) provides:

**Writing required for action.** -- . . . .
(b)(1) No action shall be brought against a lender or creditor upon any promise or commitment to lend money or to extend credit, or upon any promise or commitment to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit, unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the lender or creditor, or some other person by him thereunto lawfully authorized.

one-half interest in 3.3 acres thereof until brought to its attention by James M. Smith, its attorney during the course of the foreclosure of the Deed of Trust on December 1, 1990, when it became obvious that a mutual mistake had been made in drafting the Deed of Trust because:

(a) The Bank's policy prohibited it from extending credit secured by an undivided interest in real estate;

(b) The Bank knew that Welborn B. Duck had acquired the entire interest in the 3.3 acre parcel thereof; and,

(c) Welborn B. Duck had been advised prior to the making of the loan that he would have to have the entire interest in said tract of land for security purposes.[7]

Conversely, Duck argues that the parties were not operating under a mutual mistake and intended the exclusion in the deed of trust. The only response to Bank's motion for summary judgment appears to be Duck's deposition wherein he states as follows:

Q. Now in any event, it was your intention and the intention of the bank and your understanding that on August 16, 1982 that the Decatur County Bank would have had a mortgage on your whole 13 acres?

A. Yes.

. . . .

Q. I said on August 12, 1982 when you borrowed the $28,000 and you had an agreement to borrow up [to] $65,000, that at that time it was your understanding that Decatur county Bank had two mortgages, I guess you're saying, on the Decatur County property covering the entire interest.

A. Two mortgages covering the entire interest.

Q. All right. But whether it was one or two, it was your understanding that your whole interest in the Decatur County property was mortgaged?

A. Yes.

Although the issue of reformation is not one generally suited for summary disposition, we hold that under these facts, wherein Duck concedes that he believed Bank was obtaining an interest in the entire 13 acre tract, summary judgment was properly granted on the issue.

---

[7]Bank alleges in its complaint that in preparing the deed of trust, its secretary mistakenly typed the description of the property as it appeared in the warranty deed conveying the property to Duck which contained an exclusion for a portion of the property (3.3 acres) previously conveyed to Duck.

It results that the judgment of the trial court is affirmed and this cause remanded for any further proceedings herewith consistent. Costs are assessed against Appellant, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
HIGHERS, J. (Concurs)