# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 7, 2001 Session

## NANCY E. COTTER v. TED A. BURKHALTER, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 97-1181-I    Hon. Irvin H. Kilcrease, Jr., Chancellor

_____

### No. M2000-03183-COA-R3-CV - Filed April 30, 2002

_____

This appeal arises from an action by a Trustee against: (1) Ted A. Burkhalter (Burkhalter), an accountant/attorney, and the accounting firm, Burkhalter, Ryan & Co., P.C., for professional malpractice; (2) Burkhalter, a former co-trustee, for alleged breach of fiduciary duties; (3) Burkhalter and his partner, Linda Resha, in a general partnership, for alleged conspiracy to defraud and convert funds from the trust; and (4) Prudential Securities, Inc. for breach of fiduciary duty by allegedly permitting the diversion of funds by Burkhalter. The Chancery Court granted summary judgment in favor of Burkhalter and Burkhalter-Ryan finding that the malpractice claims were time-barred. The Chancery Court also granted summary judgment in favor of Prudential Securities finding that Prudential had not breached a fiduciary duty to the trust. Following a bench trial on the remaining issues, the Chancery Court found that the plaintiff/appellant was judicially estopped from pursuing the claims against Burkhalter for alleged breach of fiduciary duties as a trustee, and found in favor of Burkhalter and Resha on the claim of conspiracy to divert funds, finding there was insufficient evidence to establish that a conspiracy existed. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Affirmed and Remanded

FRANK G. CLEMENT, JR., SP. J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Carrol D. Kilgore, Nashville, Tennessee, for the appellant, Nancy E. Cotter.

D. Alexander Fardon, Nashville, Tennessee, for appellees, Ted A. Burkhalter, and Burkhalter, Ryan & Co., P.C.

John S. Hicks, Nashville, Tennessee, for appellee, Prudential Securities, Inc.

Linda L. Resha, Nashville, Tennessee, Pro Se.

**OPINION**

The appellant/plaintiff, Nancy E. Cotter, Individually, and as Trustee of the Verla Doyle Family Trust, sets forth the following issues on appeal.

I. Issues pertaining to claims against Ted A. Burkhalter as a Co-Trustee.

(A)    Whether the Chancery Court erred in dismissing plaintiff's claim against Ted A. Burkhalter, as Co-Trustee, upon a finding that plaintiff was judicially estopped based upon a sworn accounting filed in the Probate Court?

(B)   Whether the Chancery Court should have entered judgment against Ted A. Burkhalter and Linda Resha for conspiring to divert funds from the trust?

II. Issues pertaining to Prudential Securities, Inc.

Whether the Chancery Court erred in sustaining Prudential Securities' motion for summary judgment thereby dismissing plaintiff's claims against Prudential Securities based upon written agreements with the Co-Trustees, and, conversely, in overruling plaintiff's motion for summary judgment against Prudential Securities?

III. Issues pertaining to Burkhalter Ryan & Co., P.C. and Ted A. Burkhalter.

Whether the Chancery Court erred in sustaining the motions for summary judgment of Ted A. Burkhalter and Burkhalter, Ryan & Co., P.C. thereby dismissing plaintiff's professional liability claims against both defendants upon statute of limitation defenses, and, conversely, in overruling plaintiff's motion for summary judgment against Ted A. Burkhalter, and Burkhalter, Ryan & Co., P.C.?

Background of the Case

Nancy E. Cotter, individually,[1] and as Trustee of The Verla Doyle Family Trust, and as the Executrix of the Estate[2] of Verla Doyle, is the plaintiff/appellant.

Ted A. Burkhalter (Burkhalter) is a defendant/appellee. He is a defendant in his capacity as an accountant and attorney who rendered services for the decedent, her estate and the trust at issue. He is also sued for alleged acts or omissions in his role as a Co-Trustee. The action against

_____

[1]It is generally conceded that Ms. Cotter individually is not entitled to any relief.

[2]The appellant's brief makes little reference to the claims by the decedent's estate as distinguished from the claims by Cotter, individually, and by her as the Trustee, though the estate was added as a plaintiff by order entered Aug. 20, 1997. Page four (4) of the appellant's brief states the "Nature of the Case" as being "[a]n action by a Trustee of a trust" making no mention of the estate.

Burkhalter, individually, is an action against an accountant/attorney who drafted a trust instrument and served as co-trustee (with the plaintiff/appellant) and who additionally served as the accountant and attorney for the trust and the estate. The plaintiff alleges that Burkhalter, as co-trustee, diverted $217,000 of the trust funds for his own use. The plaintiff also alleges malpractice against Burkhalter for negligence in drafting the trust instruments.

Burkhalter, Ryan & Co., P.C. (Burkhalter-Ryan) is a defendant/appellee. It is an accounting firm. Mr. Burkhalter was a principal of the firm. The malpractice claims against Burkhalter-Ryan generally arise from the alleged acts or omissions of Ted Burkhalter as an attorney and accountant, not as trustee.

Linda Resha is a defendant/appellee. She was a partner with Burkhalter in a general partnership. She is alleged to have conspired with Burkhalter to divert funds from the trust.

Prudential Securities, Incorporated (Prudential) is a defendant/appellee. Plaintiff's claim against Prudential alleges breaches by Prudential of fiduciary obligations thereby allowing moneys to be diverted by Burkhalter. Prudential's contractual relationship in the matters at issue arise from two agreements, one being a "Fiduciary Certification of Investment Powers Agreement," the other being a series of "Letters of Authorization."

This appeal, and the matters at issue herein, arise from and were preceded by the administration of the estate of Verla D. Doyle in the Davidson County Probate Court and by a related civil action which was prosecuted by parties, generally referred to as "the Catholic Charities," against the Co-Trustees of the Verla D. Doyle Family Trust in the Davidson County Chancery Court under the style of *First American Trust Co., et al., v. Nancy E. Cotter, et al.,* Civil Action No. 95-57-III (sometimes referred to as the "Catholic Charities Case").

Ms. Cotter was the niece of Verla Doyle. She is a beneficiary under the trust and the will. She was named Executrix of the estate and Co-Trustee of the trust. Initially, Cotter served as Executrix of the probate estate of Verla Doyle, however, she resigned following the filing of a civil action against her by the "Catholic Charities." She was succeeded by First American Trust Company. Upon settlement of the Catholic Charities case, First American resigned. Ms. Cotter resumed her former duties as Executrix following the settlement of the Catholic Charities Case and the corresponding resignation by First American.

Ms. Cotter also served as a Co-Trustee of the Verla Doyle Family Trust. She initially served with Ted Burkhalter as a Co-Trustee. Following the resignation of Ted Burkhalter, Ms. Cotter continued to serve as the sole Trustee.

Nine months before Mrs. Doyle died she, with the assistance of Cotter, retained Burkhalter to help with estate planning and related matters. Burkhalter drafted, among other documents, the Doyle Family Trust, being an intervivos trust. Cotter and Burkhalter were named co-trustees of the

Doyle Family Trust. Doyle conveyed most of her $3.5 million in assets to this trust.[3] Burkhalter also drafted Doyle's power of attorney, naming Cotter attorney-in-fact. Burkhalter additionally drafted Doyle's Last Will and Testament, which bequeathed $1.625 million of her estate to various charities, mainly the Catholic Charities referenced above. The will bequeathed to Cotter certain direct bequests, including Doyle's house, $80,000 and personal property, which were in addition to what Cotter would receive under the Doyle Family Trust.

A few months later, in December 1992, Doyle executed a codicil to her will. Additionally, Doyle transferred $40,000 to an "exemption trust" for the education of Cotter's children.

Shortly before Burkhalter prepared the instruments referenced immediately above, $610,770 of Doyle's funds, which had been on deposit in her individual account, were transferred into joint survivorship accounts with Cotter. The latter transactions, those in late 1992 and early 1993, left few assets for disposition under Doyle's Will.[4] Mrs. Doyle died on April 9, 1993.

The charities, and other relatives of Doyle that were legatees to most of Doyle's assets under her will, filed suit to invalidate the Family Trust, the Exemption Trust, and the transfer of $610,770 to Cotter via the survivorship accounts. The Catholic Charities (along with Cotter's sisters, Doyle's other nieces) claimed that Doyle had been incompetent for some time and that Cotter had unduly influenced Doyle to Cotter's advantage, resulting in Cotter receiving at least one million dollars more than she would have received.

The plaintiffs in the Catholic Charities Case also sought to remove Cotter as executrix. Cotter, in response to the removal petition, resigned as executrix. The Probate Court appointed First American Trust Company to succeed Cotter as the Estate's administrator. The Probate Court also ordered Cotter to submit a final accounting. Cotter filed her accounting with the Probate Court Clerk in September 1994.

Cotter Settles with the Charities.

Burkhalter resigned as a co-trustee of the Doyle Trust while the charities' lawsuit was pending. Thereafter, the Trust, along with Cotter individually, settled with the charities, which settlement required that Cotter and the Estate of Verla Doyle pay the charities one million dollars.[5]

---

[3]The Doyle Family Trust directed the Co-Trustees (Cotter and Burkhalter) to apply the Trust's assets in this order upon Doyle's death: (1) fund, as needed, an educational trust for relatives; (2) pay Doyle's debts and funeral bills; (3) $600,000 to Cotter; (4) $150,000 each to Doyle's other two nieces; (5) $25,000 each to the children of Doyle's three nieces; (6) $20,000 to a non-relative; (7) fund a charitable remainder trust with $750,000; and (8) dispose of anything left at the trustees' discretion.

[4]It is undisputed that Burkhalter was unaware of the transfer of $610,000 and creation of survivorship accounts.

[5]The amount of $1,625,000 had been bequeathed to the charities in the Doyle will.

To fund the settlement, Cotter agreed that she would transfer all of the Trust's assets to the Doyle Estate, in care of its new administrator, First American Trust Company. Cotter also agreed to personally restore to the Estate additional monies the Estate may need to fund its one million dollar settlement with the Catholic Charities. The final judgment in the Catholic Charities Case required that all trust moneys be transferred to the Estate. The final judgment stated:

> Immediately upon the finality of this Order, there shall be transferred from the Trustee of the Verla Doyle Family Trust and vested in the Administrator, C.T.A. of the Estate of Verla Doyle, Deceased, all claims of any nature asserted by the Trust, including the assertion of the Defendant Cotter that the Trust has a valid claim against her former Co-Trustee for unauthorized diversion of trust funds. In addition, the Trustee shall transfer and pay over to the Administrator all funds remaining in any and all bank accounts of the Verla Doyle Family Trust and shall assign and transfer to the Administrator all investment accounts presently owned in the name of the Verla Doyle Family Trust. Upon such payments over and assignments to the Administrator, C.T.A., (First American Trust Company) the Trust will no longer have any assets upon which it can operate nor any possibility of receiving additional assets in the future, the same will thereupon immediately terminate by operation of law, and the said Trust shall thereby be deemed to be void *ab initio*.

The settlement provided that Cotter could keep the rest of the money she received via the joint accounts and the Trust.[6] Furthermore, Cotter and the charities agreed that Cotter was to be re-named executrix of the Doyle Estate following satisfaction of the bequests (settlement) to the charities.

In August 1997, following settlement of the Catholic Charities Case, Cotter was reinstated as Executrix of the Verla D. Doyle Estate. Thereafter, Cotter, in her capacity as Executrix, was substituted as the plaintiff in this matter.

Summary Judgment Rulings.

Plaintiff filed a motion for summary judgment on her malpractice claim against the accounting firm, Burkhalter-Ryan. The Burkhalter defendants filed a cross-motion for summary judgment, asserting *inter alia*, that Plaintiff was judicially estopped by virtue of a sworn statement filed in the Probate Court. On the cross-motions for summary judgment as to malpractice claims against Burkhalter and the Burkhalter-Ryan accounting firm, the Court dismissed such claims as time-barred by T.C.A. § 28-3-104(a) (2) on authority of *Kohl v. Ewing*, 977 S.W.2d 528, 532-533 (Tenn.1998), by order of May 21, 1999. The Court did not rule upon the defendants' contention "that Cotter is judicially estopped from denying that the trust transactions were 'made in accordance with the trust instrument' as she represented under oath in Probate Court."

---

[6]As a result of the settlement with the charities, no legatee under Doyle's Will, and no beneficiary under the Trust, is expected to receive any more money from the Trust or from the Estate, at least until Ms. Cotter recoups the funds she had to remit pursuant to the settlement.

Plaintiff also filed a motion for summary judgment against Prudential. Prudential filed a cross-motion for summary judgment and, thereafter, a (Renewed) Motion for Summary Judgment on January 20, 2000. Initially, the trial court denied the cross-motions for summary judgment by Prudential and Cotter by order entered May 21, 1999; however, on February 4, 2000, the Court sustained Prudential's (Renewed) Motion for Summary Judgment. The stated basis for the ruling was the co-trustees' signatures to Prudential's "Fiduciary Certification of Investment Powers" form and "the language of Article XIV, Section C of the Verla D. Doyle Trust document . . . ."

Bench Trial in July 2000.

A three-day bench trial was held in July of 2000. The Court took the case under advisement at the end of the trial.[7] On October 3, 2000, the Chancellor rendered a memorandum opinion granting judgment for the defendants on all remaining issues. The Chancellor's memorandum opinion included findings that Burkhalter made withdrawals from the trust fund account, and that as to at least four of these, portions of the "proceeds of these withdrawals were deposited into the Resha//Burkhalter business (NABTS)," but that: "Plaintiff acknowledged her approval of Burkhalter's transactions totaling $217,000 in the Final Estate accounting she signed under oath and submitted to the Probate Court in September of 1994." The Court also held that the plaintiff was judicially estopped from "bringing a claim for breach of fiduciary duty" on the sole ground that " 'one who has made oath to a state of facts in a former judicial proceeding' is estopped from contradicting the former statements in a later proceeding."

## I. **Claims against Ted A. Burkhalter as a Co-Trustee.**

The Appellant raises two issues on appeal challenging the trial court's rulings as to the appellant's claims against Ted A. Burkhalter in his capacity as a Trustee. The first is:

Whether the Chancery Court erred in dismissing plaintiff's claim against Ted A. Burkhalter, as Co-Trustee, upon a finding that plaintiff was judicially estopped based upon a sworn accounting filed in the Probate Court?

Cotter's final accounting, filed with the Probate Court Clerk in September 1994, contains several references to the Verla Doyle Family Trust. Cotter's accounting states, in pertinent part:

The Trust referred to herein is the Verla D. Doyle Family Trust, Nancy E. Cotter and Ted A. Burkhalter, Co-Trustees. This trust was created January 5, 1994, as a revocable intervivos trust and substantially all of the assets of Verla D. Doyle were received in trust. *All disbursements and transactions in trust have been made in accordance with the trust instrument.* A complimentary copy of an internal summary of the trust transactions has been prepared and provided to the Administrator C.T.A. (Emphasis added).

---

[7]During the trial the Court ruled that any questions on punitive damages would be deferred to a bifurcated hearing. As a result of the trial court's rulings and ours, the claim for punitive damages is moot.

The above immediately precedes Cotter's sworn verification of her accounting.

The two-page summary of the Trust's transactions to which Cotter referred when verifying that "all disbursements and transactions in trust have been made in accordance with the trust instrument" included the following entries under the heading "<u>DISBURSEMENTS</u>":

| | |
|---|---|
| Ramsey Burkhalter, PC, CPA's | $ 14,094.18 |
| Ted A. Burkhalter, Atty & Trustee | $ 136,612.16 |
| ........ | |
| Investment in NABTS Limited Partnership (incl Absolute Video) | $170,000.00[8] |

Cotter signed the two-page summary of the Trust's transactions when she signed the accounting. In her final accounting Cotter stated that she knew Burkhalter was providing the summary of the Trust's transactions to First American Trust Company, which institution the Catholic Charities had chosen to succeed Cotter as Administrator of Mrs. Doyle's estate. The final accounting included pertinent financial information about the Trust's transactions. Moreover, the record reveals that Burkhalter conferred with Cotter's counsel and obtained both of their agreements prior to circulating the accounting.

Cotter asserts that the estoppel defense is misplaced as a matter of fact, arguing that she never "swore" to the trust accounting. We respectfully disagree upon the basis of the facts shown above and in the record.

Cotter further asserts that the estoppel defense is misplaced as a matter of law, arguing that Rule 803(1.2) of the Tennessee Rules of Evidence, which provides in the final sentence that "Statements admissible under this exception are not conclusive" abolishes the doctrine of judicial estoppel. Cotter cites the comments of the Advisory Commission in support of her argument, which comments state in pertinent part:

> The final sentence is intended to abolish the distinction between evidentiary and judicial admissions. Unless made conclusive by statute or another court rule, such as T.R.C.P. 36.02 on requests for admission, all party admissions are simply evidentiary, not binding, and are subject to being explained away by contradicting proof.

T.R.E. 803(1.2) (Advisory Commission Comments)

---

[8]Cotter sought to recover from Burkhalter, Resha and Prudential the NABTS investment and most of the fees paid to Burkhalter and Burkhalter & Ryan. The $150,706.35 in total fees were for the legal, accounting, and administrative work Burkhalter and Burkhalter-Ryan performed for Doyle and her Trusts over two years. Cotter later sought Probate Court approval of $46,308.00 in attorneys' fees paid to Burkhalter and $4,994.18 in accounting fees paid to BR&Co. Those amounts were not disputed at trial. Cotter admits that she agreed to the $50,000 loan to Absolute Video, a venture benefitting Cotter's son. Cotter did not dispute either the $50,000 loan or the $170,000 NABTS investment shown on the Trust accounting.

Ms. Cotter seeks to be relieved of her sworn statements in a prior, now concluded, civil action, and she seeks to take an inconsistent if not contradictory position in the civil action pending before us. We do not believe Rule 803(1.2) permits such, nor should it be interpreted to permit such. We view Rule 803(1.2) and the Advisory Commission comment as being applicable to "Admissions by Party-Opponent" in a pending case but not to admissions in a "prior" case or "prior" judicial proceeding. The sworn statements by Cotter at issue were presented in a different and now concluded matter, being the civil action against her by the Catholic Charities Case, *First American Trust Co., et al., v. Nancy E. Cotter, et al.,* Civil Action No. 95-57-III, and the related probate administration of the Estate of Verla Doyle. The matter before us is not the administration of the estate of Verla Doyle and it is not the Catholic Charities Case; it is a civil action brought by Ms. Cotter, individually, and as a Trustee against Ted A. Burkhalter and others. The case before us is admittedly a derivative action to the now concluded Catholic Charities Case, however, it is not the same proceeding and it is now too late for Cotter to set the record straight in that proceeding.

Rule 803(1.2), Advisory Commission Comments notwithstanding, applies to statements made by a party in a pending matter, which rule affords a party, during the pendency of "that" matter, the opportunity to set-the-record-straight before the case (that case) is concluded. This would afford a party, in a pending action (as distinguished from a subsequent action) the opportunity to correct a statement or testimony that may be incorrect, inaccurate, incomplete, etc. before the matter becomes final.

The law of judicial estoppel ordinarily applies to one who has made oath to a state of facts in a former judicial proceeding which he or she undertakes to contradict in a subsequent proceeding. *Decatur Co. Bank v. Duck*, 969 S.W.2d 393, 397 (Tenn. Ct. App. 1997) (defendant estopped to deny secured indebtedness to bank when that denial would contradict a sworn schedule of liabilities defendant had filed in bankruptcy court).

> A general statement of the doctrine of judicial estoppel is that where one states on oath in former litigation, either in a pleading or in a deposition or on oral testimony, a given fact as true, he will not be permitted to deny that fact in subsequent litigation, although the parties may not be the same . . . .

> The doctrine . . . rests solely on public policy which exalts the sanctity of the oath. The object is to safeguard the administration of justice by placing a restraint upon the tendency to reckless and false swearing and thereby preserve the public confidence in the purity and efficiency of judicial proceedings.

*Melton v. Anderson*, 222 S.W.2d 666, 669 (Tenn. Ct. App. 1948). See also *Gilley v. Jernigan*, 597 S.W.2d 313, 318 (Tenn. Ct. App. 1979); and *Bubis v. Blackman*, 435 S.W.2d 492 (Tenn. Ct. App. 1968) (". . . [A] party cannot be allowed to solemnly take a position in the course of litigation which he thinks is to his advantage, and, then, change this position to another and contrary one when he deems it to his advantage to do so.")

Our Supreme Court has applied the doctrine of judicial estoppel as recently as 1999 in *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999), an opinion authored by now Chief Justice Drowota. The *Marcus* court noted that "Under the doctrine of judicial estoppel 'a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, . . . .'" quoting, *Obion County v. McKinnis*, 211 Tenn. 183, 364 S.W.2d 356, 357 (1962). *Marcus* also noted that the doctrine was "[d]esigned to prevent a party from 'gaining an unfair advantage." *Carvell v. Bottoms*, 900 S.W.2d 23, 30 (Tenn. 1995)

Aside from the controlling authority of a Tennessee Supreme Court opinion, it is pertinent to note that the *Marcus* court applied the doctrine of judicial estoppel as recently as 1999. This is pertinent for *Marcus* was published after Rule 803(1.2) was amended. We find this compelling. Moreover, *Marcus* confirms the continued existence and applicability of the doctrine of judicial estoppel, Rule 803(1.2) notwithstanding.

In fairness to the appellant, it should be acknowledged that the scholarly authors of *Tennessee Law of Evidence* are also of the belief that the last sentence of Rule 803(1.2), (statements admissible under this exception are not conclusive), alters Tennessee law, meaning that the doctrine of judicial estoppel was abolished by Rule 803(1.2). The treatise further states, "This language, . . . abolishes the common-law principle that sworn statements in pleadings or testimony - and even unsworn pleadings - were conclusive. Now, under the Tennessee Rules of Evidence, admissions are evidentiary, meaning they are admissible but can be rebutted." *Tennessee Law of Evidence*, §8.06(10), p. 8-58, 59 (Cohen, Sheppeard and Paine, 4th Ed., 2000). The Fourth Edition, which was published in 2000, emphasizes this point by stating:

> Some Tennessee courts, however, apparently still apply the doctrine of judicial estoppel. In *Cardin v. Campbell*, [920 S.W.2d 222, 223-24 (Tenn. Ct. App. 1995)] the court held that "where a person states under oath in former litigation, either in pleadings or testimony, that a fact is true, she will not be permitted to deny that fact in subsequent litigation." The *Cardin* court did not mention Rule 803(1.2).

*Tennessee Law of Evidence*, §8.06(11)(a), p. 8-59 (Cohen, Sheppeard and Paine, 4th Ed., 2000).

While neither *Cardin* nor *Marcus* mention Rule 803, we nevertheless respectfully disagree with the suggestion that the last sentence under Rule 803(1.2) abolishes the doctrine of judicial estoppel. In our opinion, *Marcus* and *Cardin* correctly state the current law on judicial estoppel, particularly as it concerns a party's testimony in a "prior" matter as distinguished from statements made or testimony given by a party in a matter which is still pending. This is why *Marcus* and *Cardin* are not inconsistent with Rule 803(1.2).

In her sworn final accounting to the Probate Court, filed September 1994, Cotter stated that all disbursements "have been made in accordance with the trust instrument." Cotter's final accounting was a direct result of and was material to the Catholic Charities Case in which Cotter was

the principal defendant. To allow Cotter to now change the sworn statement she presented to the Catholic Charities, the beneficiaries of Mrs. Doyle's will, and the Probate Court would violate long standing grounds of public policy and would diminish the sanctity of an oath. *See Sartain v. Dixie Coal & Iron Co.*, 266 S.W. 313, 318 (Tenn. 1924); cited in *Marcus*, at 602. Accordingly, we find, as the Chancellor found, that it is too late for Cotter to "correct" or "change" her prior sworn statement, since the action in which the statement was made is now concluded. Accordingly, Cotter is precluded under the doctrine of judicial estoppel from taking a contrary position in this civil action. We therefore affirm the judgment of the Chancery Court on this issue.

The next issue Appellant raises is: Whether the Chancery Court should have entered judgment against Ted A. Burkhalter and Linda Resha for conspiring to divert funds from the trust?

The Memorandum opinion of the Chancery Court entered October 3, 20000, states:

> . . . [P]laintiff contends that Burkhalter and Resha conspired to convert funds from the Verla Doyle Family Trust. It is well settled that a conspiracy to defraud requires a common purpose, supported by a concerted action to defraud, that each has the intent to defraud and said intent is common to each conspirator as well as an understanding that the other has the purpose. See 6 *Tenn. Jurisprudence*, Conspiracy, Section 3, page 366. After careful review of all the facts and the testimony at trial, it is clear that Resha had no knowledge of Burkhalter's intentions regarding the funds. Nor, did she have an individual intent to defraud or convert monies from the Trust.

*Id.* at page 4.

Resha testified that she had no knowledge of Burkhalter's action or plans. Moreover, Resha testified that she had no fraudulent intent, nor did she have knowledge of any improprieties. Resha's testimony is supported by Burkhalter. More importantly, there is no direct or compelling evidence to the contrary.

The trial court heard this matter without a jury. Therefore, our review of the findings of fact by the trial court is *de novo*, accompanied by a presumption of correctness. Tenn. R. App. P. 13(d). Accordingly, we will affirm the trial court's decision unless an error of law affecting the result has been committed or unless the evidence preponderates against the trial court's findings of fact. *Roberts v. Robertson County Board of Education*, 692 S.W.2d 863, 685 (Tenn. Ct. App. 1985), citing *Willis v. Smith*, 683 S.W.2d 682, 687-88 (Tenn. Ct. App. 1984). In conducting our review of the trial court's decision, we are also mindful that the trial court's findings based upon its own determination of the credibility of the witnesses and upon disputed evidence should be given great weight by this Court and should not be disregarded unless there is clear, concrete and convincing evidence to the contrary. *APCO Amusement Co. v. Wilkins Family Restaurants of America, Inc.,* 673 S.W.2d 523, 529 (Tenn. Ct. App. 1984).

Our review of the facts establishes that there is more than ample evidence to support the trial judge's findings. Accordingly, we affirm on this issue.

## II.  Issues pertaining to Prudential Securities, Inc.

The issues pertaining to Prudential Securities are whether the Chancery Court erred in overruling plaintiff's motion for summary judgment against Prudential Securities and, conversely, in sustaining Prudential Securities' motion for summary judgment, which summary judgment dismissed plaintiff's claims against Prudential Securities based upon written agreements with the Co-Trustees?

The trial court disposed of the claims against Prudential on summary judgment. The standards for this court's review of a trial court's grant of summary judgment are well-settled. Tenn. R. Civ. P.  56.04 states that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W. 2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W. 2d 555, 559 (Tenn. 1993).

This court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Byrd*, 847 S.W. 2d at 210-11.  When both the facts and conclusions to be drawn therefrom permit a reasonable person to reach only one conclusion, the trial court's decision granting summary judgment should be upheld. *McCall v. Wilder*, 913 S.W. 2d 150, 153 (Tenn. 1995); *Carvell*, 900 S.W. 2d at 26.

The fundamental issues pertaining to a summary judgment motion are: (1) whether a factual dispute exists; (2) whether the disputed fact is material to the outcome of the case; and (3) whether the disputed fact creates a genuine issue for trial. *Byrd*, 847 S.W. 2d at 214.  A fact is "material" for summary judgment purposes, if it "must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Luther v. Compton*, 5 S.W. 3d 635, 639 (Tenn. 1999).

Ms. Cotter sets forth numerous arguments concerning Prudential and the Family Trust; yet, the simple issue for this Court to determine is whether Prudential's acts or omissions constituted a breach of a duty. Accordingly, we must ascertain what duties existed and whether they were or were not breached.

Cotter's claims are based on Prudential's alleged breach of fiduciary duty in handling the assets of the Family Trust.  Prudential denies that it was a fiduciary with respect to the accounts maintained by the Family Trust.  Courts in other jurisdictions have held that brokerage firms maintaining non-discretionary accounts do not assume broad fiduciary duties to their customers. *See e.g. Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Cheng*, 901 F.2d 1121 (D.C. Cir. 1990); *Leib v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 461 F.Supp. 951 (D.C. Mich., 1978).

The dispute between the Appellant and Prudential essentially involves the interpretation of the various agreements. The rules concerning the interpretation of written agreements are clear. Where the agreement is plain and unambiguous, its meaning is a question of law, and it is the court's function to interpret the agreement according to its plain terms. *Petty v. Sloan*, 277 S.W. 2d 355 (1955). The language must be taken and understood in its plain, ordinary, and popular sense, *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W. 2d 578 (Tenn. 1975), and the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. *Ballard v. North American Life & Cas. Co.* 667 S.W. 2d 79 (Tenn. Ct. App. 1983). If the language of a written instrument is unambiguous, the court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat. Bank of Crossville*, 620 S.W. 2d 526 (Tenn. Ct. App. 1981).

At the time the Family Trust account was opened at Prudential, Cotter executed, *inter alia*, a form entitled Fiduciary Certification of Investment Powers. The Fiduciary Certification, in pertinent part, provides:

> In consideration of your opening and maintaining one or more accounts for the trust, pension, profit sharing plan, estate or other entity named below, I or we, the undersigned fiduciary or fiduciaries, as applicable, certify as follows:
>
> ***
>
> (4) This certification authorizes you to accept orders and other instructions relative to the account or accounts as titled above from those individuals or entities named below. *This includes, but is not limited to, authorization to buy, sell or hold securities and to receive and disburse monies.* The individuals named may execute any documents which you may require relevant to the opening or maintaining of the account or accounts. Any documents executed by any of the listed fiduciaries shall be conclusive evidence that the fiduciary is authorized to enter into the transactions contemplated by such document(s). *Unless it is specified otherwise, any of those listed below may individually act on behalf of the account or accounts*:  (emphasis added).

The Fiduciary Certification served as written delegation by Cotter of power over the Family Trust. Prudential relied on the appellant's execution of the fiduciary Certification in allowing one Trustee to direct the disbursement of funds.

In addition to the Fiduciary Certification, Cotter also signed and consented to the use of Letters of Authorization through which either Trustee could order the disbursement of funds. The Letters of Authorization serve as further evidence that Prudential could rely solely on Burkhalter's instructions as to the disbursement of funds from the account. The Letters of Authorization were pre-signed by both Cotter and Burkhalter to be kept and used by Prudential. By executing the Fiduciary Certification, Cotter agreed that Burkhalter alone could authorize disbursements from the Prudential account.

The undisputed material facts are: (1) the appellant signed a Fiduciary Certification which allowed Prudential to rely on Burkhalter's instructions in disbursing funds from the Family Trust, (2) the appellant authorized Prudential to disburse funds from the account through the execution of pre-authorized Letters of Authorization, (3) the Trust Instrument expressly allowed the appellant to delegate authority over the account, and (4) the appellant gave sworn testimony in a Probate Court proceeding that all actions related to the Family Trust were taken in accordance with the terms of the Trust Instrument.

The various documents relevant to the Family Trust clearly authorized Burkhalter to act alone in directing the disbursement of funds. Not only was Burkhalter authorized to act alone, the authorization for him to do so came from the Cotter. Moreover, the Trust Instrument, the very document upon which Cotter relies, authorized the delegation of these powers and allowed Prudential to accept such a delegation.

Cotter's arguments as to the manner in which Burkhalter used the funds are irrelevant to Prudential's liability. By signing the Letters of Authorization, Cotter consented to their use. Even if Burkhalter misused the Letters of Authorization, Prudential breached no duty in disbursing funds pursuant to the validly executed Letters of Authorization.

Therefore, it is our conclusion that Prudential did not breach any duty to Cotter or the Trust when relying on Burkhalter's instructions in disbursing funds from the account. Accordingly, the trial court's decision granting Prudential's motion for summary judgment and denying the appellant's motion for summary judgment should be affirmed.

### III.  Malpractice Claim against Burkhalter Ryan & Co., P.C. and Ted A. Burkhalter.

The issue pertaining to the malpractice claim against Ted A. Burkhalter and Burkhalter-Ryan[9] is whether the Chancery Court erred by sustaining the motions for summary judgment of Ted A. Burkhalter and Burkhalter-Ryan which dismissed plaintiff's professional liability claims against both defendants upon the statute of limitation defense?

The standard of review for summary judgment has been addressed above and shall not be restated.

A professional malpractice claim must be filed within one year of when the claim accrued. Tenn. Code Ann. § 28-3-104(a)(2). What is usually disputed, and what is seldom clear, is when did the plaintiff know or when should the plaintiff have reasonably known that a claim accrued. The Chancellor held that the claim accrued more than one year before April 8, 1997, the date Cotter filed suit on behalf of the Trust. The Estate, as distinguished from the Trust, arguably did not assert its

---

[9]Burkhalter-Ryan, the accounting firm, asserts that the services rendered by Ted Burkhalter were legal services, those of an attorney, not those of an accountant. Burkhalter-Ryan asserts that such services were not within his scope of duties as an accountant with the firm.

-13-

claim until four months after Cotter filed suit. It was not until August 20, 1997 that the Estate became a plaintiff. That is the date on which the Chancery Court granted Cotter's motion to substitute the Estate for the Trust.[10]

> [A] cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant . . . .
>
> An actual injury occurs when there is the loss of a legal right, remedy or interest, or the imposition of a liability . . . .
>
> An actual injury may also take the form of the plaintiff being forced to take some action or otherwise suffer "some actual inconvenience," such as incurring an expense, as a result of the defendant's negligent or wrongful act.

*John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn.1998).

This malpractice action was filed on April 8, 1997 following issuance of the Internal Revenue Service estate tax assessment, known as the "90-day letter," on April 4, 1997, seeking to recover losses allegedly suffered by the Doyle Family Trust, as the holder of substantially all assets of the late Verla D. Doyle, as the owner of such assets and the sufferer of all consequences of tax liabilities of the Estate of Verla D. Doyle. The losses are alleged to have been caused by estate and inheritance tax liabilities increased by negligence of Burkhalter and his accounting firm Burkhalter-Ryan, and Burkhalter's drafting of the estate planning and trust instruments at issue and his acts of approving these as adequate to achieve deductions.

To determine whether the Chancellor correctly ascertained when the cause of action accrued, and when the plaintiff knew or should have know that a cause of action had accrued, it is important to review the relevant chronology. The most pertinent dates are April 8, 1996, being one year before Cotter filed this lawsuit on behalf of the Trust, and August 20, 1996, being one year before the Estate was substituted as plaintiff and asserted its malpractice claim):

Dec. 1992    Doyle signs the Exemption Trust instrument.

Jan. 1993    Doyle signs the Family Trust instrument.

Apr. 1993    Doyle dies.

July 1994    Burkhalter files the Estate's federal and state tax returns, which Cotter signs on behalf of the Estate.

---

[10]As noted earlier, the appellant does not list the estate as an appellant.

Aug. 1994    The Estate's successor administrator, First American Trust Company, questions Burkhalter's deduction of the Edgar Doyle settlement payment on the Estate's tax returns. Burkhalter responds in a letter that, if the Administrator believed the deduction improper, it should "immediately file an amended return with the IRS to minimize the accrual of interest on the additional taxes."

Aug. 1995    Lawyers for the Estate's successor administrator, First American, decide that one or both trust instruments are defective and research whether the Estate should bring a malpractice claim.

Sep. 1995    The IRS requests that the Estate of Verla Doyle produce the trust instruments and any documentation substantiating the Edgar Doyle settlement so that the IRS may review them as part of its examination of the Estate's return.

Dec. 1995    The IRS conducts an on-site audit of the Estate's tax return. A lawyer for the Estate's administrator attends.

Apr. 1996    The IRS gives the Estate a "draft" copy of the IRS's adjustments to the Estate's return and meets with the administrator's lawyers.

June 1996    The administrator's lawyers begin settlement discussions with the IRS.

This chronology shows that by April 8, 1996:

> (1) the Estate's successor administrator had challenged Burkhalter on deducting the Edgar Doyle settlement payment;
>
> (2) the administrator's lawyers had decided that either or both trust instruments were so defective that they could not be defended in good faith if challenged by the IRS, and those same lawyers researched a possible malpractice claim against Burkhalter;
>
> (3) as part of its audit, the IRS had requested the Estate's tax return, trust instruments, and other documentation pertaining to the Edgar Doyle settlement; and
>
> (4) after the on-site audit, the IRS had discussed with the administrator's lawyers problems with the Estate's tax return.

The chronology also shows that the Estate gained still more knowledge by August 20, 1996, one year before the date on which the Estate became a plaintiff in this case and first began to assert its malpractice claim.

A lawyer's knowledge of an alleged malpractice is attributable to the estate. *See Wilkins v. Dodson, Parker, et. al.*, 995 S.W.2d 575, 584 (Tenn. Ct. App. 1998) (lawyer's knowledge imputed to client for purposes of determining when claim accrued). Accordingly, the plaintiff's malpractice claim is time-barred for the knowledge (of the alleged malpractice) of the lawyers for the administrator is attributable to the Estate.

Accordingly, we affirm the trial court on this issue.

<u>In Conclusion</u>

For the reasons set forth above, the judgment of the Chancery Court is affirmed in all respects. This cause is remanded to the Chancery Court of Davidson County for any necessary further proceedings consistent with this opinion.

Costs of this appeal are taxed against Appellant, Nancy E. Cotter, individually, and as Trustee of the Verla Doyle Family Trust, and as Executrix of the Verla Doyle Estate, for which execution may issue if necessary.

_____
FRANK G. CLEMENT, JR., SPECIAL JUDGE